HENRY LEWIS AND ANOTHER vs. THOMAS McCABE AND ANOTHER.

Liquors were sold and delivered to a retailer of liquors upon the condition that the title should remain in the venders till they were paid for, with the understanding that the vendee might dispose of them in his business, and that in case any were sold before payment the venders could enforce the condition only against such portion as might remain unsold. Held to be a valid conditional sale, and that the title to the portion unsold remained in the venders, and was good against an attaching creditor of the vendee.

The authority to sell the liquors was to be regarded as authority to sell them as the property of the venders and not as that of the vendee.

The venders lived in the state of New York. The sale was made in this state by an agent, subject to their approval. They approved it, and the liquors were delivered to the vendee in this state, and payment was expected to be made to an agent in this state. Held that the transaction was to be regarded as taking place in this state and was therefore governed by the laws of this state.

AMICABLE SUBMISSION, upon an agreed statement of facts, to the Court of Common Pleas of Hartford County. The facts were as follows:—

On the 15th of June, 1880, at New Britain in this state, the plaintiffs made a conditional sale of two one-half barrels of liquors, of the value of $68.28, to one Michael McAvoy of New Britain, and upon the 9th of July, 1880, one other conditional sale to him of one barrel of liquor of the value of $58.05. All the merchandise was immediately after the respective sales placed in the possession of McAvoy at New Britain.

It was an express condition of both the sales that the

title to the merchandise should not vest in the vendee until it was fully paid for, and until such payments were made the title was to remain in the venders.

The sales were made at New Britain by a traveling agent of the plaintiffs, who reported the terms of sale to his principals in New York, and it was optional with them whether they would ratify the contract made by him. They did ratify it, and the merchandise was sold conditionally upon the terms made by the agent, the ratification being before the delivery of the merchandise. The following October all the merchandise was attached by the defendants as the property of McAvoy, in a suit brought against him by the defendants, and was taken into the possession of the officer serving the writ, and is now held by him. At the time of the attachment the two one-half barrels of liquors remained intact, and the original packages had not been opened. The one barrel of liquor had been opened a day or two before and a small quantity drawn therefrom and sold.

It was the intention of the vendee to have paid for all the merchandise on the day after the attachment was made, when the agent of the plaintiffs was expected to be in New Britain.

McAvoy is a retailer of liquors, and it was supposed by the parties that the merchandise would be used in his business, and in case any of it should have been sold and consumed before the conditions of sale were complied with, the venders could only enforce their condition against such portion as might remain unsold.

No payment had been made on account of any of the merchandise at the time of the attachment, but it was then and is now wholly unpaid for. The plaintiffs have made demand upon the defendants, and also upon the officer to return the merchandise, and they have also asked the defendants to pay the amounts unpaid upon the merchandise, but the defendants and the officer have refused either to return the merchandise or to make the payments.

Upon the foregoing facts the question submitted to the court is, whether or not the condition attached to the sales

was valid and operative in law; if it was, judgment is to be rendered for the return of the merchandise, otherwise for the defendants.

On these facts the court, (*Calhoun, J.*,) rendered judgment for the defendants, and the plaintiffs brought the case before this court by a motion in error.

*F. L. Hungerford*, for the plaintiffs.

1. The contract was made in Connecticut and the rights of the parties are therefore to be determined by the laws of this state. It is found that the sales were made at New Britain, that the purchaser expected to make payment to the traveling agent of the plaintiffs there, and that the merchandise was delivered to him there. These facts make the contract a Connecticut contract and their force is not impaired by the fact that the doings of the plaintiffs' agent were subject to ratification in an adjoining state.

2. By the law of Connecticut the conditions attached to the sales of the property in question are valid, and the plaintiffs are entitled to recover their property. The language of the court in *Forbes* v. *Marsh*, 15 Conn., 394, is applicable to this case. "They" (speaking of the Massachusetts cases sustaining conditional sales,) "are based upon the principle of the common law, which construes contracts according to the intention of the parties, and allows men to contract according to their own pleasure, unless contrary to the policy of the law or certain technical rules. The owner may dispose of his goods to whomsoever he pleases, at any time, and in any manner. For every man's bargain ought to be performed as he intended it. When he relies upon his remedy it is but just that he should be left to it, according to his agreement; but on the contrary, there is no reason why a man should be forced to trust where he never meant it. For the agreement of the minds of the parties is the only thing the law respects in contracts." So in Massachusetts. "In the construction of contracts the intention of the contracting parties is principally to be regarded, and such an interpretation of the contract is to

be given as will best carry their intention into effect, provided it is not inconsistent with the rules of law." *Barrett* v. *Pritchard*, 3 Pick., 515. In this case wool was sold to be paid for in six months, with a condition as follows : " the wool, before manufactured, after being manufactured, or in any stage of manufacturing, to be the property of said Barrett, (the seller,) until the above amount is paid." The condition was held good, not only as against the purchaser, but as against his creditors. *Burbank* v. *Crooker*, 7 Gray, 158, is particularly in point. In this case a stock of goods was sold to a shopkeeper to be put into his shop for sale, but upon condition that the title should not vest in him until payment of the price. The condition was held operative, not only as against the conditional vendee, but also as against a purchaser from him of the whole stock of goods. So in Vermont. *White* v. *Langdon*, 30 Verm., 599 ; *Armington* v. *Houston*, 38 id., 448. It is submitted that there is nothing in the present case that should deprive the plaintiffs of the benefit of their contract as they made it, and that to hold the conditions of the sale inoperative would be inconsistent with the reason and spirit of many decisions of this court in this class of cases. The mere fact that it was supposed that the liquors would be used by McAvoy in his business, (presumably not until they were paid for,) and that in case any of the liquors should be sold and consumed before being paid for the conditions of sale could not be enforced against the portion so sold, would seem to be no reason why the plaintiffs' property should be open to seizure by McAvoy's creditors, and why they might not claim as their own so much of their property as was in McAvoy's possession at the time of the attachment.

*J. Walsh*, for the defendants.

1. By the sale of the liquors in question, McAvoy was vested with the power to sell the same in his business as a retail liquor dealer, and was permitted by the plaintiffs to hold himself out to the world as the owner of them, and in

a manner inconsistent with a retention of ownership; there-
fore the conditional sale was merely colorable, and the title
will be deemed to have vested absolutely in McAvoy, as to
his creditors. Conditional sales made *bonâ fide* have too
long been upheld by this court to be questioned, but every.
sale bearing that name is not valid, nor will the name by
which it may be called determine its true character. In
the case of *Forbes* v. *Marsh*, 15 Conn., 384, this court recog-
nizes this doctrine, which was laid down by STORRS, J., in
the court below :—" If however the transaction was fraudu-
lent, and not in good faith; if in truth and fact it was
intended as a sale; if the transfer was merely colorable, or
made to conceal the property from Peck's creditors; or if
there was a design or intention to make the property appear
to belong to Peck in order that he might obtain credit upon
it; *or if the plaintiff permitted Peck to hold himself out as
the owner of the property;* or if the plaintiff himself held
out Peck as the owner of the property; in either of these
cases it was liable to the attachment levied upon it, and
the verdict should be for the defendant." The merchandise
in controversy was in McAvoy's possession from June and
July, 1880, to October, 1880, when it was attached, and at
the time of attachment one of the barrels had been opened
and part of its contents sold. The property was " to the
view of the world, and in the eye of the law as it looks to
the rights of creditors, and the prevention of fraud," the
property of McAvoy, and therefore liable to attachment for
his debts. *Norton* v. *Doolittle*, 32 Conn., 411; *Hatstat* v.
*Blakeslee*, 41 id., 302. In New York, in a case identical
with this, the courts ruled that the property vested abso-
lutely in the vendee. *Ludden* v. *Hazen*, 31 Barb., 650. In
this case the plaintiff brought trover before a justice of the
peace, for parts of two barrels of whiskey and part of a keg
of gin seized by the defendant as a constable, on an execu-
tion against one Hackett. The plaintiff claimed title as
owner, and that the liquors were part of a large quantity
which he had sold to Hackett, to become his when paid for.
The residue of the liquor had, prior to the levy, been sold

by the defendant at retail contrary to law. ALLEN, J., giving the opinion of the court, says: "The running of an unlicensed grocery upon borrowed whiskey is a new expedient by which a party may violate the laws and avoid pecuniary responsibility, and calls for a novel application of the doctrines incident to conditional sales of personal property. That personal property may be sold and delivered under an agreement for the payment of the price at a future day, and the title by express agreement remain in the vender until payment of the purchase price, is now settled. Such payment is strictly a condition precedent, and until performance the property does not vest in the buyer. This is one of the cases in which the law tolerates a separation of the apparent from the real ownership of chattels, when the honesty of the transaction is made to appear. But when the purpose for which the possession of the property is delivered to the buyer is inconsistent with the continued ownership of the claimant, the transaction will be presumed fraudulent as against creditors and purchasers. The form of the transaction will be deemed to be colorable and the title held to have vested absolutely in the buyer. The principles of *Griswold* v. *Sheldon*, 4 Comst., 591, are entirely applicable to a case of that character. But the principle of conditional sales, aside from fraud, which is very apparent, will not uphold such sale when the property is to be delivered to the buyer for consumption or for sale, or to be dealt with in any way inconsistent with the ownership of the seller, or in a manner which would necessarily destroy his lien or right of property. The buyer is in all other cases treated as a lessee or bailee and with only the rights which would attach to lessees or bailees. In *Herring* v. *Willard*, 2 Sandf., 418, the article sold was an iron safe, and OAKLEY, CH. J., said it was exactly the case of leasing personal property with an agreement to sell it at a future time on receiving a stipulated price, and then adds: 'It is not the case of an article placed in the hands of one who keeps similar articles for sale, as goods deposited with a merchant or trader;' thus indicating the distinction which

would exclude this case from the principles relied upon. *Strong* v. *Taylor* was the case of a canal boat. NELSON, CH. J., lays stress upon the fact that the buyer was 'to use the boat for the purpose of paying for it in pursuance of the terms agreed on.' He was not at liberty to deal with it as his own. *Barrett* v. *Pritchard* was the case of a sale of wool to be manufactured by the buyer, and the manufacturer neither destroyed the wool nor its identity, and hence the sale was consistent with the continuing of the lien or ownership of the seller. The judges say :—' The creditors of King [the purchaser] had no reason to believe him the owner of the wool unless they were informed of the sale ; for possession of it for the purpose of manufacturing was not evidence of property.' Can the same be said of whiskey dealt out at a grocery ? In *Dresser Manf. Co.* v. *Waterson*, 3 Metc., 9, the printing cloths which were the subject of the sale were delivered to the buyer to be printed and forwarded to a third person, whose acceptance was to be given on payment, a disposition entirely consistent with the sellers' lien. The cloths were printed and going forward as theirs, and the fact is remarked upon by the judge in giving the opinion of the court. This transaction cannot be upheld as a conditional sale. By the contract of sale and the delivery of the liquors to Hackett to make a part of his stock in trade and to be retailed to his customers, the property vested in him and became liable for his debts." The principles laid down in this case were affirmed by the same court in the case of *Bonesteel* v. *Flack*, 41 Barb., 435, and in *Powell* v. *Preston*, 1 Hun, 513. The doctrine contended for by the plaintiffs would enable a hopeless bankrupt to defraud the public. *Starr* v. *Knox*, 2 Conn., 230.

2. The negotiation for the sale of the liquors, although carried on by the plaintiffs' agent with McAvoy in New Britain, required the assent of the plaintiffs to make it a complete contract, which assent was given by them in New York, and it was therefore completed in that state. *Scudder* v. *Worster*, 11 Cush., 573 ; *Abberger* v. *Marrin*, 102 Mass., 70 ; *Dolan* v. *Green*, 110 id., 322 ; *Sortwell* v. *Hughes*, 1

Curtis C. C., 244; *Boothby* v. *Plaisted*, 51 N. Hamp., 437. It is an elementary principle of law that a contract is to be decided by the law of the place where it is made. *Smith* v. *Mead*, 3 Conn.; 255. The contract having been made in New York, the courts of that state have decided that the title in such cases vests absolutely in the purchaser, when the rights of attaching creditors are in question.

LOOMIS, J. There is much contrariety of reasoning and decision relative to the validity of what are called conditional sales in different states, and often to some extent in the same state.

The courts of Pennsylvania have most firmly established the rule that a sale and delivery of personal property with an agreement that the ownership shall remain in the vendor until the purchase money is paid, is fraudulent and void as to creditors of the vendee and innocent purchasers; but they are obliged to except cases of bailment where no present contract of sale is regarded as made, and they have often found difficulty in distinguishing between cases that lie near the border line separating sales from bailments, where there is a condition upon which the bailee may become the owner. See *Statfield* v. *Huntsman*, decided in January, 1880, and *Brunswick* v. *Hoover*, decided in November, 1880, reported in the Albany Law Journal, Vol. 24, No. 10, pages 185 to 187, and cases there cited.

The courts of New York seem to concur with those of Pennsylvania in holding conditional sales void as to purchasers, (*Steelyards* v. *Sanger*, 2 Hilton, 96, *Smith* v. *Lynes*, 1 Selden, 41, *Haggarty* v. *Palmer*, 6 Johns. Ch., 437,) but differ in giving effect to them against levies made by creditors and assignments in trust or as security for the payment of antecedent debts. *Haggerty* v. *Palmer* and *Smith* v. *Lynes*, supra; *Keeler* v. *Field*, 1 Paige, 312; *Herring* v. *Hoppod*, 15 N. York, 409; *Beaven* v. *Lane*, 6 Duer, 232; *Wait* v. *Green*, 35 Barb., 585. But when the agreement confers on the conditional vendee the right to sell or a right inconsistent with continued ownership of the original

vender, the courts of New York pronounce the transaction fraudulent as against both creditors and purchasers. *Ludden* v. *Hazen*, 31 Barb., 650; *Bonesteel* v. *Flack*, 41 Barb., 435; *Powell* v. *Preston*, 1 Hun, 513.

In Maine, Vermont and Massachusetts the condition that the right of property shall remain in the vender until payment is held good not only as between the original parties, but also against purchasers from the vendee and creditors of the latter, even when possession goes with the sale, and there is nothing to indicate that it is not absolute. In all the cases of this class that have hitherto been considered by this court, the court has uniformly and consistently applied the principle embodied in the ancient maxim, " that when a man hath a thing he may condition with it as he will." 1 Sheppard's Touchstone, 118.

In the leading case of *Forbes* v. *Marsh*, 15 Conn., 384, WILLIAMS, CH. J., in delivering the opinion, cited several cases decided by the courts of Massachusetts, and added:— " It is claimed however that these and many other cases of a similar character are peculiar to that state. The court think otherwise, and that they are based upon the principle of the common law, which construes contracts according to the intention of the parties, and allows men to contract according to their own pleasure, unless contrary to the policy of the law or certain technical rules. The owner may dispose of his property to whomsoever he pleases, at any time and in any manner. 2 Bl. Com., 447. When he relies upon his remedy it is but just that he should be left to it according to his agreement, but on the contrary there is no reason why a man should be forced to trust where he never meant it. Per HOLT, CH. J., in *Thorpe* v. *Thorpe*, 1 Salk., 171. For the agreement of the minds of the parties is the only thing the law respects in contracts. Plowd., C. 140. * * The rule of law making the property of one man liable for the debts of others in whose hands it is found, is applicable particularly to that property which was once owned by the possessor, and is by him sold or mortgaged to another, and then suffered to remain in his posses-

sion. In such cases possession is evidence of fraud, because there is not given to the world the usual evidence of a change of title. The vender or mortgagor is therefore presumed to remain owner. of the property as before. It is otherwise in cases like that before us. The vendee comes into possession of property which was known to belong to another man. Whether therefore the vendee had borrowed it, or hired it, or purchased it, becomes a matter of inquiry, and ought to be ascertained by him who proposes to trust his property upon the faith of this appearance; for the law offers its protecting shield to those who attempt to protect themselves. Accordingly we find that all these cases of conditional sales made *bonâ fide* have been held good as against attaching creditors as well as against the parties."

The doctrine of this case has been reaffirmed in *Hart* v. *Carpenter*, 24 Conn., 427, *Tomlinson* v. *Roberts*, 25 id., 477, *Cragin* v. *Coe*, 29 id., 51, *Hughes* v. *Kelly*, 40 id., 148, and *Brown* v. *Fitch*, 43 id., 512.

But it must be observed that these cases, while firmly sustaining the condition and protecting the title of the original vender against all other parties, do not directly involve the precise question now presented. Those cases are all distinguishable from this in two particulars—the property was of a nature not necessarily to be consumed in the use, and there was no sort of concession on the part of the original vender that the conditional vendee might dispose of the property without first paying the price agreed upon. Both these elements, to some extent at least, exist in the present case, and occasion hesitation on the part of the court as to the validity of the condition as against the creditors of McAvoy.

The finding bearing upon the question is as follows:— "It was an express condition of both sales that the title to the merchandise should not vest in the vendee until it was fully paid for, and until such payments were made the title was to remain in the venders. * * Said McAvoy is a retailer of liquors, and it was supposed by the parties that the merchandise would be used in his business, and in case

any of it should have been sold and consumed before the
conditions of sale were complied with, the venders could
only enforce their condition against such portion as might
remain unsold."

Under such an agreement, after the property has been
attached by creditors, will the law consider it as belonging
to the plaintiffs or to their conditional vendee, McAvoy?

If we invoke the aid of the courts of other states to give
an answer to this question, we find decisions of the highest
courts of Maine, Vermont and Massachusetts, protecting
the title of the original vender under agreements substan-
tially the same as the one we are considering.

In *Rogers* v. *Whitehouse*, 71 Maine, 222, goods were
bought by a retail trader upon condition that the property
should not vest in him until they were fully paid for, but
with an understanding between the parties that' they were
to go into the store of the conditional purchaser and be
sold by him in the regular course of trade ; and it was held
that they did not pass to the assignee in insolvency of the
latter for the benefit of his creditors, although the original
vender would have been estopped to deny the title of those
who might purchase portions of them of the retailer in the
regular course of his business, and it was distinctly held
that it was not essential to the existence and validity of
such a condition that the conditional vendee should have no
right to sell to others.   BARROWS, J., in giving the opinion
said:—" We see no legal objection to a wholesale dealer
making a conditional sale to a retailer with the understand-
ing that he may dispose of the goods as they may be called
for at retail, but that as between themselves the property
shall not pass until the goods are paid for, and in such case,
while the purchaser at retail would get a title which the
original vender could not impeach because of his agreement
with the retailer, it would be the title of the original vender,
and not that of the retailer, who has none and can convey
none except in the manner which his arrangement with the
vender permits."

In *Armstrong* v. *Houston*, 38 Vermont, 448, the plaintiff

sold one Thompson provisions on conditions, made in good faith, that they were to remain the property of the plaintiff until paid for, but with the understanding that Thompson might consume them in his family. The defendant, a constable, attached the provisions in behalf of a creditor of Thompson. Held—that the condition was valid, and the title to the goods remained in the plaintiff until they were paid for or consumed. KELLOGG, J., in delivering the opinion of the court said:—"It was the unquestionable right of the plaintiff to sell this property to Thompson upon the condition that, until payment of the price, the property should remain the plaintiffs'. The retention of the title to the property is not a fraud upon any person, and such a contract is one which every person has a right to make. In a conditional sale the possession of the property is ordinarily transferred to the vendee, and very frequently with expectation of both of the parties to the sale that the property will be used by the vendee; but in such cases the vendee is, until the performance of the condition, only a bailee of the property for a specific purpose, and he acquires no property in the goods from the possession merely. His right rests upon the agreement of the parties, and their intention in making the contract of sale is to be carried into effect if the transaction was entered into in good faith, unless the contract is one which contravenes some established rule of law."

Of the Massachusetts cases the one most in point is *Burbank* v. *Crooker*, 7 Gray, 158, where there was a sale and delivery of a stock of goods to a shopkeeper to be put into his shop for sale, but upon condition that the title should not vest in him until payment of the price, and it was held that the title did not pass, and that the condition was operative as against even a purchaser from him of the whole stock of goods; although it was also held that had a sale been made of individual articles in the ordinary course of business in a country store, the plaintiff might have been estopped to assert any right adverse to such purchaser, having placed them in the hands of such dealer with the understanding that they were to be thus used.

The New York cases already referred to render it probable that the courts of that state would declare such a condition inoperative, although there is a distinction of some significance between the case of *Ludden* v. *Hazen*, on which the defendant relies, and the case at bar, in this—that in the former the vendee, to use the language of the court, was to "run his unlicensed grocery upon borrowed whiskey," all of which by the terms of the agreement was to be paid for only when sold—showing that a sale by the groceryman was the most prominent part of the contract. In so flagrant a case it might well be held that the condition was colorable, fraudulent and void. We concede however that the reasoning contained in the opinion renders it probable that the contract we are considering would in that state be declared void against purchasers and creditors.

The finding in the case now under consideration leaves it a little in doubt how far the parties contemplated any use of the liquors in McAvoy's business until paid for by him; and it appears that although he had had possession for several months, yet all the packages remained intact except one, which was opened and a small quantity drawn therefrom a day or two before the attachment, and on the day after the attachment full payment was intended to be made to the agent, who was then expected in New Britain.

But conceding that the parties actually contemplated that there might be some sales made before actual payment of the price, yet the terms of the agreement, coupled with the conduct of the conditional vendee in pursuance of it, evince the perfect good faith and *bonâ fide* character of the transaction, so that it cannot be pronounced void on account of any wrong intent of the parties. If therefore the condition is to be held inoperative at all, the law must so declare it upon grounds of public policy, because it was calculated to give the one clothed with the possession a false credit, or else upon the ground that the plaintiffs through their contract are to be regarded as holding the possessor, or conditional vendee, out to the world as absolute owner.

The objection as to giving a false credit has undoubtedly much force, so that in several states the courts consider it as sufficient, but it applies with more or less strength according to the circumstances to all cases of conditional sales where the vendee is clothed with full possession and apparent ownership; but as the court says in *Forbes* v. *Marsh*, supra, in this state "all these cases of conditional sales made *bonâ fide* have been held good against attaching creditors," and in reply to the objection we are considering it warns persons against putting faith in appearances except where the case comes within the rule of the vender's retaining possession after the sale, and persons about to give credit on the faith of such appearances must make inquiry; and in this respect the language of our courts is similar to that of CAMP-BELL, J., in giving the opinion in *Ketchum* v. *Brennan*, 53 Miss., 596—"A buyer must beware of purchasing from one who has not title; possession is not title."

The other objection, as to holding out the possessor to the world as absolute owner, is involved partly in the one just considered, except so far as the contract in question must be construed as contemplating or authorizing a sale by the possessor.

Possession, with the *jus disponendi* added, has been regarded by many courts as a sufficient reason for declaring a contract colorable and fraudulent without regard to the real intent of the parties. Bump on Fraudulent Conveyances, 123, and cases there referred to.

We concede that there is much force in the reasoning supporting such a rule, but at the same time we must bear in mind the spirit and drift of our own decisions as they may have induced the making of such contracts. While it is true, as already stated, that no case identical with the present in the particular feature we are now considering has hitherto been before this court, yet the cases referred to clearly show that the controlling consideration has been the *bonâ fide* character of the transaction and the honest meaning and intent of the parties, without applying any technical rule of public policy, as in the cases of a retention of possession by the vender after a sale.

The courts of Massachusetts and Connecticut have always been in harmony on this vexed subject, and the principles hitherto adopted by us, if they do not logically compel, yet very naturally lead to the same result as already reached in that state, where the title of the original vender has been protected notwithstanding the objection we are considering.

If however the contract in question must be construed to mean that the plaintiff authorized McAvoy to sell the property as his own, we should be constrained to hold it so absolutely inconsistent with the retention of the title in the plaintiff as to waive or make void the condition. But in this case the condition that no title was to pass until payment is so clear, express and positive in its terms that we are inclined to give it full effect, and to construe what is afterwards said of the understanding of the parties relative to a sale as the court in *Rogers* v. *Whitehouse*, supra, did, that is, not as authority to sell as his own (having nothing himself) but as authority simply to transfer the title of the plaintiff in the manner authorized.

The discussion, so far, implies that we consider that the validity of the contract in question should be determined by the laws of this state; but we ought perhaps to refer particularly to the claim made in behalf of the defendants, that "the negotiations for the sale, although carried on by the plaintiffs' agent in New Britain, required the assent of the plaintiffs in New York to complete the contract," and that therefore it must be considered as there made.

We think the claim thus stated is based on a partial statement of the facts. But if we supply the omission by reference to the finding, that says "the sales were made at New Britain," that payment was to be there made to the plaintiffs' agent, and that "all the merchandise was immediately after the respective sales placed in the possession of McAvoy at New Britain," it will become clear that the transaction is to be governed by the laws of this state.

There was error in the judgment complained of and it is reversed.

In this opinion the other judges concurred; except CARPENTER, J., who dissented.