<hr/>

LEONARD W. MACK vs. ARTHUR L. STORY.

New London Co., May T., 1888. PARK, C. J., CARPENTER, PARDEE, LOOMIS and BEARDSLEY, Js.

The plaintiff, a wholesale liquor dealer in New York, sold to C, a retail liquor dealer in this state, a quantity of liquors, under an agreement that the title to them should remain in the plaintiff until they were fully paid for, but that C might sell them to his customers in the course of his business, and in case any were so disposed of before full payment was made he should pay the plaintiff's agent for the portion sold at his first call upon him thereafter, and that the plaintiff would enforce the condition of the sale only against the portion undisposed of. C was also, on receiving the liquors, to give his acceptance of the plaintiff's draft on time for the price. Held, in a suit against a creditor of C, who attached the liquors as his property, that the sale was a conditional one, and that the title was in the plaintiff at the time of the attachment.

[Argued May 30th, 1888—decided January 4th, 1889.]

ACTION to recover the value of spirituous liquors attached by the defendant, as an officer, upon a writ against one Corture ; brought to the Court of Common Pleas in New London County and ·heard before *Crump, J.* Facts found and judgment rendered for the plaintiff, and appeal by the defendant. The case is fully stated in the opinion.

*W. H. Shields* and *D. G. Perkins*, for the appellant.

The facts place this case clearly outside the limit which this court fixed for itself in the case of *Lewis* v. *McCabe*, 49 Conn., 155. In that case the court says :—" If, however, the contract in question must be construed to mean that the plaintiff authorized McAvoy to sell the property as his own, we should be constrained to hold it so absolutely inconsis-

tent with the retention of the title in the plaintiff as to waive or make void the condition." The vendee could not sell the liquors as his own unless he had title to them. The vendor placed them in his absolute control with power to sell them as his own. This power is so utterly inconsistent with the condition imposed as to the vendor's title, that it completely destroys and renders void the condition. The condition under the circumstances of this case was colorable, fraudulent and void. It cannot be claimed that the vendee was to sell as the vendor's agent; first, because the finding shows that he was to sell the liquors as his own; and second, because if he sold as agent of the vendor, then his principal, the vendor, not having a license, would violate the law of this state requiring a license to sell intoxicating liquors. The court will not presume that the parties entered into an arrangement to violate the law.

It is a peculiarity of the case too that the vendee gave his acceptance for the full price of the liquors and this under the agreement made at the time of the purchase, and the liquors were billed to him as if sold absolutely. It seems impossible on these facts to make it a merely conditional sale with a retention of the title by the vendor.

*C. F. Thayer*, with whom was *J. M. Thayer*, for the appellee.

Loomis, J. This is a complaint in trover to recover the value of four barrels of spirituous liquors which were attached by the defendant, as a deputy sheriff, on the 3d day of August, 1885, by virtue of a writ in favor of McNamara & Pratt against Joseph Corture. The controlling question upon the trial was, whether Corture or the plaintiff owned the liquors so attached, and this depended upon the question whether, upon the facts found, the sale of the liquors from the plaintiff to Corture, pursuant to which the latter obtained the possession, was upon a valid condition for the retention of the title in the plaintiff, or was absolute so far as the creditors of Corture were concerned.

The trial court held that the sale was conditional, and rendered judgment for the plaintiff. The sole question for review is, whether there was error in so holding.

The finding of facts is as follows :—" On or about June 6th, 1885, the plaintiff's agent and traveling salesman for the New England states, one Jacob Harris, also of said New York city, sold to Joseph Corture, who was at that time, and up to August 3d, 1885, proprietor of the Metropolitan Hotel in Norwich, and the keeper of a bar-room in the hotel where liquors were sold at retail to the public, the liquors described in the complaint, to be delivered in Norwich, upon the express condition that the title to the liquors should remain in the plaintiff until they were fully paid for, and upon the further understanding and express agreement that Corture might sell and dispose of the liquors as they should be called for by customers in the course of his business as such barkeeper, and in case any of the liquors should be so sold or disposed of before full payment should be made by him of the entire bill of goods bought of the plaintiff, Corture should account for and pay for the same to the plaintiff's agent, upon his first visit after such sales, at the price at which the liquors were billed to him ; and that the plaintiff should only enforce the condition of his sale to Corture against the portion of the liquors remaining unconsumed and unsold at retail.

" It was further agreed at the time of the sale that all the liquors so sold by the plaintiff to Corture, should be paid for in three or four months, and that an acceptance should be given by Corture for the price of the goods, and that something should be paid on the acceptance to the salesman whenever he should call at Corture's place.

" The plaintiff, upon being acquainted by the salesman with the terms and conditions of the agreement with Corture, ratified the agreement, and upon the 12th day of June, 1885, sent the goods to Corture upon the conditions stated. There was a mistake made in the kind of liquor contained in one barrel sent, and that barrel (with the exception of five gallons not here in controversy, retained by Corture with the plaintiff's consent) was returned to the plaintiff,

and a barrel of the kind of liquor originally ordered by Corture was sent to him in exchange for it.

" It was agreed between the plaintiff and Corture that the plaintiff should draw on the latter, for the amount for which the liquors were sold, and after the above mistake was corrected, the plaintiff did draw on Corture two drafts, dated June 12th, 1885, one on three months' time and one on four months', each for one half the amounts agreed upon for the price of the liquors sold.

" The drafts, which were negotiable, were then accepted by Corture and delivered to the plaintiff, but have never been paid either in whole or in part, and are still held by the plaintiff, and have never been negotiated. Corture has never paid the whole or any portion of the price of the liquors to the plaintiff.

" When Corture received the liquors, he placed them in his bar-room, where he kept and sold other liquors.

" On August 3d, 1885, the defendant, who was a deputy sheriff, seized the liquors described in the complaint, being a portion of the liquors sold by the plaintiff to Corture, by virtue of a lawful writ of attachment, in favor of McNamara & Pratt, wholesale liquor dealers of Norwich, and creditors of Corture, wherein he was commanded to attach the goods or estate of Corture," and though requested to return the liquors to the plaintiff, he has always refused and still refuses to deliver them to him.

" On the 2d day of August, 1885, Corture absconded and could not be found at the time of the attachment.

" On the 4th day of August the plaintiff's salesman called at Corture's bar-room, to look for and take back the liquors, and found that they had been attached. From the time of the sale up to 4th day of August the salesman had not called on Corture or at his place of business.

" At the time of the attachment the liquors described in the complaint were found in the bar-room, and in each of the barrels in which they were contained had been placed a faucet, and the liquors were on draught and from each of the barrels had been drawn a portion of its contents. The

barrels had also been painted, and so rendered valueless for commercial purposes as liquor barrels, but the plaintiff did not know of the painting until after the attachment."

A majority of the members of this court unite in the opinion that, upon the foregoing facts, the case comes clearly within, and must be controlled by, the decision in *Lewis* v. *McCabe*, 49 Conn., 141.

The mode of making the contract in the present case through a traveling salesman, its subsequent ratification, its subject matter and all its essential provisions, are so nearly identical with the former one, as to suggest that the former decision must have been in the minds of the parties, when the latter contract was made. In the former case, as appears from the finding, " it was an express condition that the title to the merchandise should not vest in the vendee until it was fully paid for, and until such payments were made the title was to remain in the vendors." In the present case it is found that the sale and delivery were " upon the express condition that the title to the liquors should remain in the plaintiff until they were paid for."

It may be well to remark in this connection that the finding is not that such was the agreement in form, (as the defendant seems to assume,) but in reality, which excludes the idea that the transaction was colorable, or a mere subterfuge, or fraudulent in intent. The defendant however does not pretend that there is any difference in the two findings as to this feature of the contracts, (and it is the most important of all,) but claims that there is a material distinction relative to the right of sale given to the conditional vendee.

In the former case it was found that the vendee was " a retailer of liquors, and it was supposed by the parties that the merchandise would be used in his business, and in case any of it should have been sold and consumed before the conditions of sale were complied with, the vendors could only enforce their condition against such portion as might remain unsold."

In the present case the sale was upon " the understanding and express agreement that Corture might sell and dispose

of the liquors as they should be called for by customers in the course of his business as such bar-keeper, and in case any of the liquors should be so sold or disposed of before full payment should be made by him of the entire bill of liquors bought of the plaintiff, Corture should account for and pay for the same, to the plaintiff's agent, upon his first visit after such sales, at the price at which the liquors were billed to him ; and that the plaintiff should only enforce the condition of his sale to Corture against the portion of the liquors remaining unconsumed and unsold at retail."

Now, notwithstanding the difference in the number of words used, it seems clear that the intent and meaning are the same. In both cases the minds of the contracting parties met upon precisely the same provisions in substance. Whatever rights the vendor had or lost in the one case he had and lost in the other, and whatever right of sale the vendee had in the one case he had equally in the other. The fact that in the one case it is found that the parties mutually supposed and understood that the provisions were part of the agreement, while in the other they expressly so agreed, is too narrow a margin to predicate any legal distinction upon, or any reasoning that can lead to a different result.

The fact that the parties deemed it necessary to make the provision in question, shows by necessary implication that without it the title, as they understood, was so retained by the conditional vendor that no sale at all could be made by the vendee ; and it shows also that by the mutual understanding of the parties the title to be transferred, pursuant to the permission given, was the title of the conditional vendor and not that of his vendee. The same reasoning also suggests that the dictum contained in the former opinion, apparently so much relied upon by the counsel for the defendant in the present case, to the effect that where the contract must be construed to mean that the conditional vendee has full authority to sell all the property as his own, it would waive or make void the condition, applies no more to this case than it did to the former one.

Corture's authority in the present case to "sell and dis-

pose of the liquors as they should be called for by customers in the course of his business as bar-keeper," can have no broader meaning than the permission given McAvoy in the former case, to sell in his business as a retailer of liquors.

The court in that opinion did not accept the doctrine there stated as entertained by some courts, that possession, with *jus disponendi* added, would as matter of law make the contract colorable and fraudulent without regard to the real intent of the parties. On the contrary it was there stated that in this state "the controlling consideration has been the *bonâ fide* character of the transaction and the honest meaning and intent of the parties, without applying any technical rule of public policy." And upon further reflection we are prepared to re-affirm this statement, so that the true test in every such case is, did the parties intend to have the title pass on the delivery, or did they honestly intend that it should remain in the original vendor?

The considerations already stated we think will suffice to show that the material provisions of the contract in the present case cannot be distinguished from those of the contract in the former case. But in this case, certain matters outside the contract, consisting of the acts of one or the other of the parties after the agreement was made, are strongly urged as impeaching its validity.

In the bill rendered by the plaintiff to Corture for the amount of the liquors, the form was that of an absolute sale, and underneath the heading of the bill, in smaller letters, was a general statement as to terms and that the plaintiff did not insure delivery or safe carriage, but that they were at the purchaser's risk, after a receipt was signed by the transportation company.

Drafts, one for three months, and one for four, which were negotiable, (but never in fact negotiated or paid,) were drawn by the plaintiff on Corture and accepted by him.

Also when Corture received the liquors he placed them in the bar-room where he kept other liquors, and afterwards painted and tapped the barrels and drew out some of the

contents; but the plaintiff was ignorant of these acts until after the liquors had been attached by the defendant.

An obvious, and as it seems to us sufficient, answer to all these facts, is, that they were merely evidential of the true intent of the parties. It was evidence addressed to the mind of the trial judge to convince him that the alleged condition of the sale was a mere subterfuge. All these facts were considered and weighed by the court, but when it found, notwithstanding, that the sale was conditional and not absolute, and that the delivery of the liquors was in Norwich and not in New York, the evidence relied upon had spent its entire force, and it has no longer any legal significance whatever in the case. It is not the province of this court to review or revise the weighing of evidence by the trial court. The evidence referred to, while it was important to be considered upon the question as to the intent of the parties, yet obviously it all admitted of an explanation consistent with the making of the contract as found by the court. In regard to the acts of Corture referred to in this connection of which the plaintiff had no knowledge, there is of course another obvious reason why his title should not be injuriously affected on that account.

We have thought best to base our vindication of the judgment of the court below entirely upon the authority of the case cited. It is quite obvious that that case led the court to the result reached in this and there is much probability that it induced even the making of the contract in the form adopted. Our reasoning of course implies that we are well satisfied with that decision, but however this may be, conditional sales have been too long and too firmly established in this jurisdiction by repeated decisions of this court to be now called in question or to require further discussion. Since the decision in *Lewis* v. *McCabe*, such sales have been distinctly approved by this court in *Loomis* v. *Bragg*, 50 Conn., 228; *Cooley* v. *Gillan*, 54 Conn., 80; *Warren Manufacturing Co.* v. *Norwich Bleaching Co.*, 56 Conn., 70; and in the *New Haven Wire Company* cases, argued at the June Term in New Haven county, 1888.

Mack *v.* Story.

Such sales are also recognized and approved by the necessary implication contained in the provisions of section 920 of our General Statutes, which provides that "any property *sold upon condition,* and put into the visible possession of the vendee, unless otherwise exempt from execution, may be attached and levied upon, and sold or set out on execution, in any suit against such vendee, *subject to the rights of the vendor to its possession or ownership;* and the party attaching or levying shall have the same rights which the vendee would otherwise have had to tender to the vendor *performance of the conditions of sale."* It will be observed that the statute saves the rights of the conditional vendor in every case irrespective of the subject matter of the sale; which fully answers a suggestion made in the present case, that the doctrine of conditional sales is not applicable to the sale and delivery of property, like that under consideration, which perishes in the using. Were there occasion to seek confirmation of our position as to conditional sales from the courts of other jurisdictions, much more ample support could now be found than existed when *Lewis* v. *McCabe* was decided.

We have however observed a tendency in the states whose courts have held conditional sales valid against the claims of the creditors of the conditional vendee and of purchasers from him, to subject the matter to statutory regulations. Alabama, Iowa, Maine, Missouri, Kentucky, New Hampshire, Nebraska, New York, North Carolina, Ohio, South Carolina, Texas, Vermont, Virginia, West Virginia, Wisconsin, and some other states and several territories, require, under circumstances somewhat variant, that the contracts be in writing and recorded. Massachusetts, in the case of conditional sales of household effects or furniture, now requires a written contract, but it need not be recorded. The states of California, Delaware, Kansas, Michigan, Nevada, New Jersey, Oregon, Rhode Island and Tennessee, and the territories of Montana, New Mexico, Utah, Washington and Wyoming, require neither writing nor recording.

There was no error in the judgment complained of.

In this opinion PARK, C. J., and PARDEE, J., concurred.

CARPENTER, J., (dissenting.) I cannot look upon this transaction otherwise than as a sale and delivery of the liquors in question to Corture, with an agreement that, as between themselves, the title was to remain in the seller for the sole purpose of securing payment of the purchase money. In principle I am unable to distinguish it from a sale and delivery accompanied with a re-transfer of the title, without possession, as security merely—in legal effect a mortgage. It is an attempt to do with personal property what is done with real estate, when that is sold and mortgaged to the grantor to secure payment of the purchase money; and that is, to create by parol a valid lien on personal property, while ownership for all other purposes, and the possession, remain with the lienor. That is clearly contrary to the policy of our law. A valid secret mortgage, without possession, has always been treated in this state as of no validity against creditors of the mortgagor. Any kind of personal property may be mortgaged or pledged if the pledgee takes and retains possession of it. By statute machinery, household furniture, and some other kinds of property, may be mortgaged by a written instrument executed and recorded as the statute requires. But this is a pledge of personal property by parol, the pledgor retaining the possession and the right to sell or use the thing pledged, the sale or use of which exhausts the property and destroys the lien. I had always regarded this as an impossibility. It is true we have approached that position in some of our decisions; but not until now, or quite recently, have we come to it.

In *Forbes* v. *Marsh*, 15 Conn., 384, *A* agreed to sell a coach to *B* at a future day upon the payment of the agreed price, *B* in the mean time to have the possession and use of the coach. He failed to pay and subsequently the coach was attached as his. This court held that the transaction was not a sale, but an agreement to sell at a future day, and that the title did not vest in *B*.

In *Hart* v. *Carpenter*, 24 Conn., 427, *B* took the plaintiff's

cow into his possession, under an agreement that he should be paid for her keeping by the milk she would yield, and if, at any time within four months, he should pay the plaintiff thirty-five dollars, the title to the cow should vest in him. *B* did not pay for the cow but sold and delivered her to the defendant, who bought her in good faith. It was held that the defendant thereby acquired no title.

In *Tomlinson* v. *Roberts*, 25 Conn., 477, *A* sold and delivered a horse to *B* and took his note for the price, soon after which, by mutual consent, the contract of sale was annulled, the horse delivered back to *A*, and the note given up to *B*. It was then agreed that *B* should have the horse at the same price, provided he paid the amount within sixty days, for which he was to give his note, the horse to remain the property of *A* until the note was paid, and to be kept in his stable, but used by *B* at pleasure, he paying a fixed rate per week for such use. Before the note fell due *B* absconded, having first disposed of the horse to *C*. Held that the title to the horse after the second arrangement remained in *A*.

In *Cragin* v. *Coe*, 29 Conn., 51, *A* leased to *B* certain personal property, with an agreement to sell the same to him on payment of the price agreed upon; the title until such payment to remain in *A*. A part of the price was paid at the time in cash, and the negotiable notes of *B* given for the balance, which he failed to pay. Held that the title remained in *A*.

In *Hughes* v. *Kelly*, 40 Conn., 148, by a written contract *A* agreed to let and *B* to hire a carriage and horses belonging to *A* for eight months, at a rent of $12 per week payable weekly; the property to be owned by *B* at the end of the term if the rent should be paid according to the contract. It was held that the contract did not constitute a sale, but was an executory agreement for a future sale.

In *Brown* v. *Finch*, 43 Conn., 512, the owner of a mowing machine delivered it to *A* under an agreement by which *A* was to become the owner on paying a certain sum agreed on, part of which was to be paid down and the balance in install-

ments at certain fixed times, the owner to have the right to retake possession on default of any of the payments. It was held that the title did not vest in *A.*

In none of these cases was there in form even a present sale. There were agreements to sell; there were leases giving the lessee the right contingently to become the owner; and there were sales contingent on the performance of future conditions. In none of them was the property exhausted by its use; and in none of them was the contemplated use by the lessee or bailee at all inconsistent with ownership in another.

But in *Lewis* v. *McCabe*, 49 Conn., 141, a case quite different in its facts, the reasoning in the preceding cases was applied. I thought then that the court went too far, but I contented myself with a silent dissent. I thought then and I think now that the tendency of that decision is in the wrong direction; that it applied the doctrine of agreements to sell and contingent sales to cases radically different. There is danger of encroaching upon the well-settled principles of law applicable to the possession of personal property and liens thereon by pledge or mortgage, and of preparing the way for fraud. I think it cannot be denied that that case, following some Massachusetts cases, and cases in some of the other New England states, and rejecting the doctrine prevailing in New York and Pennsylvania, occupies a position far in advance of any other case in this state. While I feel bound by it as far as it goes, I do not feel bound to go any further in that direction. In that case, as the court interpreted the finding, McAvoy, (Corture in the present case,) was authorized to sell the liquor, not as his own, but as the property of the plaintiff, (Mack in the present case.) That was the pivotal point in the case. LOOMIS, J., speaking for the majority of the court, says: "If however the contract in question must be construed to mean that the plaintiff authorized McAvoy to sell the property as his own, we should be constrained to hold it so absolutely inconsistent with the retention of the title in the plaintiff as to waive or make void the condition."

Now let us analyze this finding and see how far this language is applicable to this case.

I concede that the court below has found, as it was found in that case, that the liquors were sold and delivered "upon the express condition that the title to them should remain in the plaintiff until they were fully paid for." If that was all that case might govern this. But it is not all. There are some features of this case which are entirely inconsistent with that finding, and which did not exist in that case.

In the first place, accompanying the delivery of the property, *there was an absolute bill of sale.* In that bill of sale there was not the slightest reference to any condition. To say nothing of the rule of law, that where the transaction is reduced to writing parol evidence is inadmissible to contradict or vary it, and admitting that that principle may not be applicable to this case, yet it remains true that where one party deliberately puts in writing his understanding of the transaction and the other party accepts it as correct, the writing is much better evidence of what was really done than the recollection of the parties *after a controversy has arisen.* But I do not invoke this principle as conclusive in itself, or as showing that the court came to a wrong conclusion as to the facts, but as tending to characterize the transaction and to exhibit it in its true light, as will presently appear.

The bill of sale commences in the usual form:—" Joseph Corture bought of L. W. Mack." Bought what? Not the possession of the liquors, not a right to sell them, not a right to become the owner subsequently by paying for them, but the *liquors themselves.*

In the next place there was printed on the bill of sale this notice: " *N. B.* We do not insure delivery or safe carriage of goods. We ship and take receipts 'in good order,' and they are at your risk after the receipt is signed by the Transportation Co." The liquors then were at the risk of Corture after delivery in New York, precisely as if the absolute title was in him ; and I think there can be little doubt that that was the real understanding of the parties. Therefore if the

liquors had been lost or destroyed *in transitu*, or if they had been destroyed by fire after reaching Corture, the loss would have been his and not the plaintiff's.

In the next place, the finding is in terms that "the plaintiff's agent * * * Jacob Harris * * * sold to Joseph Corture * * * the liquors described in the complaint, to be delivered in Norwich, upon the express condition that the title to them should remain in the plaintiff until they were fully paid for." Here is an express recognition of the transaction as a perfected sale, which is consistent with the bill of sale; and in that same connection the liquors are spoken of as "goods bought of the plaintiff."

Again. "It was further agreed at the time of *said sale*, that all of the liquors *sold by the plaintiff to Corture*, should be paid for in three or four months, and that an acceptance should be given by Corture for the price of the liquors, and that something should be paid on the acceptance to said salesman whenever he should call at Corture's place." Here the transaction is twice spoken of as an unqualified sale.

What else was done? I quote again from the finding: "It was agreed between the plaintiff and Corture that the plaintiff should draw on the latter for the amount for which the liquors were sold. * * * The plaintiff did draw on Corture two drafts, dated June 12th, 1885, one on three months time, and one on four months, each for one half the amount agreed upon for the price of the liquors sold."

Here again the liquors are twice spoken of as "sold," not an interest in them, but the liquors themselves; and the parties on the very day on which the delivery of the goods was completed, and on which the bill of sale bears date, treat the sale as an absolute one, giving and taking negotiable paper for the price. That Corture so regarded it is beyond all question, for he painted the barrels and so rendered them valueless for commercial purposes.

In view of these facts it is impossible for me to come to any other conclusion than that Corture was to sell the liquors as his own and not as the plaintiffs. If the latter, then Corture, in selling the liquors over his bar, was the agent of the

Mack v. Story.

plaintiff. The plaintiff had no license to sell in Connecticut, and it will not be presumed that it was intended to bring him into this state as a violator of our law. There is no direct finding that Corture was to sell the plaintiff's liquors, and the facts stated with overwhelming force forbid any such inference. If I am right the case is clearly brought within the qualifying language of the court in *Lewis* v. *McCabe*, and is entirely without the purview of that decision.

But I do not stand on this ground alone. I assume that the court below has found the literal facts as they existed. I have no doubt that the parties agreed that the title should remain in the plaintiff; but I take the broad ground that such an agreement is legally inoperative. It is not in good faith. A careful analysis of the finding reveals every element of an absolute sale. For every possible purpose except that of security, the parties intended that the title as well as the possession should pass to and vest in Corture. The agreement that the title should remain in the plaintiff until he was fully paid, is so utterly inconsistent with every other fact in the case, that it amounts nearly to a demonstration that the agreement was merely colorable and therefore fraudulent and void. The transaction was simply this—the liquors were sold in the ordinary way, the parties agreeing that the title should remain in the seller as security. If the form of the transaction had been a sale and delivery, and then the purchaser had reconveyed the title to the seller as security, himself retaining the possession, the reconveyance would have been void beyond all question. I contend that that is precisely its legal effect. It is the substance and not the form of the transaction that is to be regarded. Otherwise verbal mortgages may be created without limit, a salutary principle of law be abolished, and a door opened to innumerable frauds, by a simple change in the form or order of a transaction. Legal principles designed for the protection of the community are held by a very frail tenure if they can be thus easily evaded.

I earnestly contend therefore that I am right in characterizing this transaction as a sale, and a mortgage back to secure

the purchase money; which cannot be legally done. The condition being invalid, the defendant was right in his claim that the sale was unconditional, for such was its legal effect.

BEARDSLEY, J., was of opinion that the case could be distinguished from that of *Lewis* v. *McCabe*, and that the application of the principle of that case should be restricted rather than extended; and that the unrestricted right given to the purchaser to retail the liquors to his customers in his barroom was, as matter of law, inconsistent with the retention of a title in himself by the vendor.