In re TWEED.

(District Court, N. D. Iowa, C. D. August 1, 1904.)

No. 546.

1. BANKRUPTS—CONDITIONAL SALES—INVALIDITY—TITLE.

Orders for goods by which the purchaser agreed that all the goods on hand, and the proceeds of the sale of goods received under the contract, were held in trust, subject to the seller's order, until the buyer's obligations to the seller had been paid in full, title to remain in the seller until the price shall be paid in cash, etc., were in effect conditional sales, and, being void as against creditors of the buyer without notice, for want of record and acknowledgment as required by Code Iowa 1897, § 2905, the property purchased passed to the buyer's trustee in bankruptcy under Bankr. Act July 1, 1898, c. 541, § 70a (5), 30 Stat. 566 [U. S. Comp. St. 1901, p. 3451], declaring that such trustee shall acquire title to all prop-

erty which might have been transferred by the bankrupt, or levied on and sold under judicial process against him.

2. SAME—RESALE.

Where a buyer of carriages under a conditional sale thereafter executed an agreement by which he contracted to hold four of the carriages in trust for the seller, and that the money received from a sale of the goods should belong to the latter, such subsequent agreement, if treated as a resale of the carriages to the seller, was void as against purchasers or creditors of the buyer without notice, for failure to comply with Code Iowa 1897, § 2906, declaring that no sale or mortgage of personal property, where the vendor or mortgagor retains actual possession, is valid against the vendor's existing creditors or subsequent purchasers without notice, unless a written instrument conveying the same is executed and acknowledged like conveyances of real estate, and filed for record with the recorder of the county where the holder of the property resides.

3. SEQUESTRATION OF BANKRUPT'S PROPERTY—PETITION—FILING.

The filing of a petition in bankruptcy operates as an attachment or sequestration of the bankrupt's property from the date of such filing, which sequestration applies to property held by the bankrupt under conditional contracts of purchase, the conditions of which are invalid for failure to comply with state statutes, as well as to property unconditionally owned by him.

4. SAME.

Where, at the time petitioner purchased certain carriages from the S. Co., which it had previously sold to the bankrupt under a conditional contract of sale, petitioner knew that the carriages were in the bankrupt's possession, he was charged with knowledge of the right of the bankrupt to sell the same, and of their liability to be levied on and sold under judicial process against the bankrupt, the conditional contracts being void for failure to acknowledge and record as required by Code Iowa 1897, § 2905, and hence petitioner having failed either to take possession, or have an instrument in writing transferring title to him signed, acknowledged, and recorded as provided by section 2906, he was not entitled to the carriages as against the bankrupt's trustee.

In Bankruptcy. On petition for review of the order of the referee denying the petition of H. J. Indvik, asking that he be adjudged owner and entitled to the possession of four carriages in the possession of the bankrupt at the time of the adjudication, and that the trustee be ordered to turn said property over to him.

Andrew Miller, for petitioner.

REED, District Judge. February 24, 1904, Torger G. Tweed, a dealer in carriages and farm implements at Forest City, Winnebago county, Iowa, was adjudged a bankrupt upon his own petition, filed February 23, 1904. A trustee of his estate was duly appointed, who has taken possession of the property of the bankrupt, including four carriages, which are involved in this controversy. March 31 and July 9, 1903, respectively, the bankrupt gave to the Staver Carriage Company, of Chicago, Ill., written orders for a number of carriages, including those in question, which orders were as follows:

"Staver Carriage Co., Chicago: Please ship the following goods at once, of the value herein specified, and for which we agree to give our notes, on your usual form, on receipt of invoice, payable as per terms stated below.  *  *  *

"It is agreed that all goods on hand, and the proceeds of sales of goods received under this contract, whether in cash, notes, book accounts, or other proceeds, are to be held in trust for and subject to your order until we have paid in full all our obligations due or to become due to you.  *  *  *

"Title to and ownership of all goods shipped under this contract shall remain vested in you until the price thereof shall be paid in cash, or until the notes given under this contract are paid; but nothing in this contract shall be deemed as releasing us from our obligation to pay for said goods, as per the notes hereby contemplated. * * *

"[Signed] T. G. Tweed."

The carriages so ordered were delivered by the carriage company in pursuance of these orders to the bankrupt, and accepted by him. The contracts were never acknowledged by either party thereto, and were never recorded as provided by section 2905, Code Iowa.

October 21, 1903, the Staver Carriage Company and the bankrupt made the following agreement in writing:

"Agreement between Staver Carriage Co., of the first part, and T. G. Tweed of the second part: That I, T. G. Tweed, will hold in trust four jobs of first party's make, viz., #656 carriage; 1 #160; 2 #100. The moneys for sale of said goods shall belong to the Carriage Co.

"[Signed] T. G. Tweed."

It is claimed that the consideration for this agreement is that the bankrupt was to have credit for the cost of the carriages so described, upon his notes or indebtedness to the carriage company. It was not acknowledged, and was never recorded. The carriages described in this writing are those involved in this controversy. They remained in the bankrupt's stock of goods after the writing was made until he was adjudged bankrupt, no change of possession having taken place. February 19, 1904, the petitioner, H. J. Indvik, claims to have purchased of the agent of the Staver Carriage Company these four carriages, and to have given his promissory note for $175 to said company therefor. The petitioner did not take possession of the carriages, but left them with the bankrupt. No memorandum or agreement in writing of the sale to the petitioner was made or signed by either the bankrupt or the carriage company. The carriages were taken possession of by the trustee upon his appointment and qualification, as part of the property of the bankrupt. They were not scheduled by the bankrupt as a part of his estate, and he testifies that he does not know that he was ever credited by the carriage company with their cost price upon his notes, or that he charged said company therewith upon his own books.

Section 2905, Code Iowa 1897, is as follows:

"No sale, contract, or lease, wherein the transfer of title or ownership of personal property is made to depend upon any condition, shall be valid against any creditor or purchaser of the vendee or lessee in actual possession obtained in pursuance thereof, without notice, unless the same be in writing, executed by the vendor or lessor, acknowledged and recorded the same as chattel mortgages."

The orders or contracts of March 31st and July 9th, whereby the bankrupt obtained possession of these carriages, were in effect conditional sales thereof by the carriage company to this bankrupt; and, not having been acknowledged and recorded, the conditions are void, under this section, as against creditors or purchasers from the bankrupt without notice. Moline Plow Co. v. Braden, 71 Iowa, 141, 32 N. W. 247; Wright v. Barnard, 89 Iowa, 166, 56 N. W. 424; Norwegian Plow Co. v. Clark, 102 Iowa, 31, 70 N. W. 808. They are also void under section 67a of the bankruptcy act. Act July 1, 1898, c. 541, 30 Stat. 564 [U. S.

Comp. St. 1901, p. 3449]. This being true, these carriages, prior to the filing of the petition in bankruptcy, might have been transferred by the bankrupt, or levied upon and sold under judicial process against him, and upon the adjudication of bankruptcy, the title to them would pass to the trustee upon his appointment and qualification. Section 70a (5), Bankr. Act (Act July 1, 1898, c. 541, 30 Stat. 566 [U. S. Comp. St. 1901, p. 3451]).

The agreement of October 21st provides that the bankrupt shall hold these four carriages in trust for the carriage company, and the moneys for the sale of the goods shall belong to that company. This clearly contemplates that the bankrupt still had the right to sell the goods. There was no change of possession, and this agreement does not change the effect of the original contracts under which the bankrupt obtained the property.

If it be said that this transaction was a resale of these four carriages to the carriage company for the cost price thereof, to be credited upon the indebtedness of the bankrupt to that company, then the transaction would be within the provisions of another section of the Code of Iowa, which is as follows:

"Sec. 2906. No sale or mortgage of personal property, where the vendor or mortgagor retains actual possession thereof, is valid against existing creditors or subsequent purchasers without notice, unless a written instrument conveying the same is executed, acknowledged like conveyances of real estate, and filed for record with the recorder of the county where the holder of the property resides. * * *"

This not having been done, the title to or right of the carriage company in these four carriages might still have been defeated by a sale by the bankrupt, or seizure and sale under judicial process against him; and, as the property remained in the possession of the bankrupt at the time of the filing of the petition in bankruptcy, that filing was an attachment or sequestration from that time of all the property of the bankrupt for the benefit of his creditors. Bank v. Sherman, 101 U. S. 403, 25 L. Ed. 866; Mueller v. Nugent, 184 U. S. 14, 22 Sup. Ct. 269, 46 L. Ed. 405. Such sequestration applies to property held by the bankrupt under conditional contracts of purchase, which conditions are invalid under statutes like section 2905 of the Code of Iowa, as well as to property unconditionally owned by him. In re Pekin Plow Co., 112 Fed. 308, 50 C. C. A. 257 (Court of Appeals of this circuit).

It is urged that the petitioner purchased these carriages from the Staver Carriage Company, and that the provisions of the Code of Iowa and the bankruptcy act above referred to have no application to this transaction. The bankrupt, however, was in possession of the property under conditional contracts for the sale thereof to him, which conditions are void as to creditors of and purchasers from the bankrupt without notice of such conditions. As to such, the title of these carriages was absolute in the bankrupt. To revest that title in the carriage company, and prevent its being transferred by, or seized and sold under judicial process against, the bankrupt, that company was required to either take possession of the carriages, or have an instrument in writing, signed, acknowledged, and recorded as provided by section 2905 of the Code of Iowa. Failing to do this, its right to the property might

still be defeated by a sale thereof by the bankrupt, or its seizure and sale under judicial process against him. When the petitioner, Indvik, purchased the property, he knew that it was in the possession of the bankrupt, and was thereby charged with knowledge of the right of the bankrupt to sell the same, and of its liability to be levied upon and sold under judicial process against him. To protect himself against such transfer or seizure and sale, the petitioner was required either to take possession of the property, or have an instrument in writing signed, acknowledged, and recorded as provided by section 2906 of the Code of Iowa. His failure to do this was his own fault, and the court cannot relieve him from the consequences thereof. The carriages, therefore, still remaining in the possession of the bankrupt at the time of the adjudication, the title to and right of possession of them passed to the trustee upon his appointment and qualification.

The order of the referee therefore must be, and is, approved.