(113 N. W. 103.)

---

MORRISON MANUFACTURING COMPANY v. FARGO STORAGE AND TRANSFER COMPANY.

Opinion filed Aug. 3, 1907. Rehearing denied Oct. 26, 1907.

**Sale — Construction of Contract — Bailment — Parol Evidence.**

 1. The contract set forth in the opinion construed, and *held* to be an agreement of sale of the property therein mentioned, and not a bailment as contended for by appellant. *Held*, further, that even if such contract, by reason of ambiguity, could be held subject to explanation by parol, or by the subsequent conduct of the parties, such proof is insufficient to sustain appellant's contention that the same was intended merely as a storage and transfer contract.

**Interest — Sale of Goods — Necessity of Demand.**

 2. By the terms of the contract, appellant obligated itself to pay to respondent the purchase price of the property on or before December 1, 1900. The indebtedness falling due on said date, respondent was entitled to recover interest thereon from such time, at the legal rate, even though no demand for payment of such indebtedness was made prior to the commencement of the action.

Action by the Morrison Manufacturing Company v. the Fargo Storage and Transfer Company. Judgment for plaintiff and defendant appeals.

Affirmed.

*W. E. Dodge,* for appellant.

If the condition is precedent no title passes until it is performed, after that sale is absolute. 21 Am. & Eng. Enc. Law, 628; Rowan v. Union Arms Co., 36 Vt. 124; Vasser v. Buxton, 86 N. C. 335; Forrest v. Nelson, 108 Pa. St. 401.

An agreement may be considered in the light of surrounding circumstances. In re Sheldon's Estate, 97 N. W. 524; Stewart v. Pierce, 89 N. W. 234.

That sense, in which one party to a contract supposed the other understood it, will prevail. Rouss v. Creglow, 72 N. W. 429; Pratt v. Prouty, 73 N. W. 1035; Lull v. Anamosa Nat'l. Bank, 81 N. W. 784.

The construction placed upon a contract by the parties thereto will be adopted. Williams v. Autens et al., 93 N. W. 943; Rice v. McCague, 86 N. W. 846; McGavock v. Omaha Nat. Bank, 90 N. W. 230; Hart v. Hart, 94 N. W. 890; Hudson v. Columbian Transfer Co., 100 N. W. 402.

*V. R. Lovell,* for respondent.

A contract that provides for resales by vendee and the ownership of proceeds or evidence of sale, is one of conditional sale. In re Tweed, 131 Fed. 355; Standard Implement Co. v. Parlin, 33 Pac. 360; South Bend & Co. v. Cottrell, 31 Fed. 254; Hirsch v. Steele, 36 Pac. 49; Boon v. Moss, 70 N. Y. 465; F. J. Dewes Brewing Co. v. Merritt, 9 L. R. A. 270; Rogers v. Whitehouse, 71 Me. 222; Wright v. Bernard, 56 N. W. 424; Wheeler v. New Haven Wire Co., 16 Atl. 393; Mack v. Story, 18 Atl. 708; McGinnis v. Savage, 1 S. E. 746.

If a contract is ambiguous, and the evidence conflicting, the construction put upon it by the parties themselves, is one of fact for the jury. 6 Enc. of Law (2d Ed.) 439; Slayton v. Horsey, 91 S. W. 799; Richey v. Burnes, 83 Mo. 362; Sawyer v. Spafford, 58 Mass. 598; Kraemer v. Sieberg, 2 N. Y. Supp. 393; Claflin v. Elliott, 34 Atl. 259.

Where both parties move for a directed verdict, the decision will not be disturbed where there is evidence to sustain it. New England Mortgage Co. v. Great Western Elevator Co., 6 N. D. 407, 71 N. W. 130; Stanford v. McGill, 6 N. D. 536, 72 N. W. 938; First M. E. Church v. Fadden, 8 N. D. 162, 77 N. W. 615; Church v. Foley, 71 N. W. 759; Angier v. Western Assurance Co., 71 N. W. 761.

Under a conditional sale contract, on default in the terms of payment, the vendor may recover the property or sue for the purchase price. 6 Am. & Eng. Enc. Law, 480; Kilmer v. Moneyweight, 76 N. E. 271; National v. Hill, 48 S. E. 637; Davis v. Millings, 37 So. 737; National v. Dehn, 102 N. W. 965; McRea v. Merrifield, 48 Ark. 160; Loomis v. Bragg, 47 Am. Rep. 638.

Fisk, J. This appeal calls in question the correctness of the rulings of the district court of Cass county in denying the defendant's motion for a directed verdict and in directing a verdict in plaintiff's favor, the real controversy involving the construction to be given to the following contract entered into between the parties, being plaintiff's exhibit A:

"Conditions Upon Which We Accept This Order.

"That no claim for defective shares or shovels will be made or allowed after same have been in a blacksmith forge. We take a clear receipt for all the goods we ship. If anything is lost or broken, the carrier is to be held responsible, and not us. No goods are to be returned except on our order. All orders are understood to be for right hand plows unless expressly stated otherwise. Repairing done elsewhere than at the factory will not be paid for by us. We reserve the right to withhold shipments of goods to parties whose standing we have reason to question, or for other reasons satisfactory to us. No orders to be countermanded except on payment to Morrison Manufacturing Company of 20 per cent of net amount of same as liquidated damages. No damage to be claimed by purchaser if Morrison Manufacturing Company are unable to fill this order and their notice to that effect will release purchaser and give him the right to place order elsewhere. Breakage caused by defects will be made good by new parts, which will be charged for when sent, and a corresponding credit will be made only upon return of defective parts to the factory by freight. No

agreements, conditions, or stipulations, verbal or otherwise, save those mentioned in this contract, will be recognized. It is expressly agreed and understood that the title to the goods ordered herein and all other goods ordered this season shall remain in the Morrison Manufacturing Company until they have been paid for in full; and said Morrison Manufacturing Company have the right to take possession of the goods and any notes that may have been given in exchange for them, if at any time they feel themselves insecure.

"Morrison Manufacturing Company."

"Warranty Under Which We Accept This Order.

"Any goods reported as defective or not doing good work are not to be returned without orders. The right is reserved to send a man to examine, and, if necessary, to test the goods, and, if they work properly, the dealer to pay all expenses of the trip and test. If they are defective, either in material or mechanism, the manufacturer is to pay all expenses. In no case will we repair, without charge, or exchange any goods or parts thereof, that have been in use three days. Goods warranted only against breakage caused by manifest defects in material, and no returned goods will be credited on account; but defective goods will be made good and returned, or new goods sent instead, at our option.

"Morrison Manufacturing Company."

"Oct. 27, 1899.

"Morrison Manufacturing Company, Ft. Madison, Iowa—Please enter our order for the goods herein selected, delivering same on board cars at Minneapolis, Fargo Storage & Transfer Co., Fargo, N. Dak. Ship via N. P. R. R. in month of * * * at once, or within a reasonable time thereafter. We agree to forward you our notes for same within five days after receipt of goods, at prices and terms as noted herein, which are hereby made a part of this contract, for this and additional orders, during the fall season of 1899. Highest legal interest after maturity and 10 per cent fees if collected by attorneys. All extras and repairs net 30 days F. O. B. factory, unless expressly stipulated otherwise. Twenty-five per cent off list published in current repair catalogue. We thoroughly understand that cash discounts are not to be allowed excepting on the dates marked on the several pages of this contract, and that any payments made after those dates, anticipating maturity, may

be discounted at the rate of 7 per cent per annum. We desire the control of your plows and cultivators in territory described on filing page, during the season as noted above, and agree to handle no other make. We agree that this contract shall be subject to the conditions and warranty printed on opposite page. No claim will be made for goods damaged in shipment when same are receipted for in good order, or for shortage after five days from receipt of goods, or for breakage in hardened shares or shovels. It is agreed and understood that we will accept goods on arrival, pay all the freight and charges thereon, and, in case freight is agreed to be allowed, either in whole or in part, the original paid railroad expense bills shall be forwarded to Morrison Mfg. Co., and proper amount deducted from account at settlement, without interest and without claim for cash discount. No allowance to be made for express upon repairs and extras. We will look to transportation companies for all losses occasioned by damage to or failure to deliver any goods shipped when receipted for in good order. We will remit with exchange on New York or Chicago, or by express, charges prepaid, but in no case with our personal check. We hereby expressly agree that the title to and ownership of the within named goods, or that may be shipped as herein provided, shall remain, and the full proceeds in case of sale, shall be the property of the Morrison Manufacturing Company, but nothing in this clause shall release us from making the payments as herein stated. We further agree that all notes under this contract are to be taken as evidence and as an acknowledgment of the debt only and not as payment for the goods. The copy of this contract held by the Morrison Manufacturing Co. is to be considered the original and to be the binding agreement in case the duplicate varies from it in any particular. We acknowledge having received a duplicate of this contract and order.

"[Sign Here.]                Fargo Storage & Transfer Co.,
                                   "By M. F. Williams, Pr.

"Accepted subject to approval of home office of Morrison Manufacturing Co.

                                   "P. J. Downes, Salesman.

"Morrison Riding Plows.

"Terms: ——— per cent. discount or net prices as indicated. Note due December 1st, 1899, subject to a cash discount of 10 per cent. if paid September 1st, 1899, or 15 days from date of shipment and per memorandum.

"Gang Plows.

| Right Hand. | Net Price. | Fac'y Price. |
| --- | --- | --- |
| Twenty 24-in. with two 12-in. Stubble. | | |
| Bottoms 4-in. Beams 775 lbs. | $58.00 | $85.00 |
| 40—14-in. Shares Free. | | |

"Memorandum.

"Goods herein ordered unsold this season shall be due and payable same terms in 1900."

In making this agreement a printed form was used, and most of its provisions are the usual printed provisions contained in blanks furnished for the purpose by respondent. The action was commenced and the complaint framed upon the theory that said contract constituted a sale of the machinery therein mentioned by plaintiff to defendant, while defendant's assignments of error are predicated upon the theory that such contract was a bailment, or, in other words, that by the terms of said contract plaintiff delivered said property to defendant for storage and transfer merely, and that plaintiff never parted with the title thereto either absolutely or conditionally. Appellant's contention is based upon certain language found in the contract, and also upon the subsequent conduct of the parties, as well as upon certain correspondence had between them, from which it is argued that the plain intent of the parties was to treat the same as a contract of storage and transfer, and not an absolute or conditional sale. Appellant concedes that, if such contract was one of purchase and sale, absolute or conditional, the verdict was correct, except as to the allowance of certain interest.

We have carefully examined this instrument, and have reached the same conclusion as that arrived at by the trial court. There is nothing upon the face of the contract which would warrant a court in construing it otherwise than as a sale. The stipulations reserving the title in the vendor until a sale or until paid for by the vendee, and providing that the proceeds of such sale shall be and remain the property of the plaintiff until accounted for, are the usual security clauses frequently inserted in sale contracts, and

are, we think, entirely consistent with the theory of a conditional sale. As we construe the contract, there are none of its provisions which are not entirely consistent with the theory of a sale; while, on the other hand, many of its provisions are wholly inconsistent with the theory of a contract merely for storage and transfer, a few of which stand out prominently in the instrument. For instance, among other stipulations, are the following: We desire the control of your plows and cultivators during the season as noted above, and agree to handle no other make." "We agree to forward you our notes for same within five days after receipt of goods at prices and terms. as noted herein, which are hereby made a part of this contract for this and additional orders during fall season of 1899." "We will look to transportion companies for all losses occasioned by damage or failure to deliver any goods shipped when receipted for in good order." "Warranty under which we accept this order. Goods warranted only against breakage caused by manifest defects in material, and no returned goods will be credited on account; but defective goods will be made good and returned or new goods sent instead, at our option." "Nothing in this clause shall release us from making the payments as herein stated." "If anything is lost or broken, the carrier is to be held responsible and not us." "It is expressly agreed and understood that title to the goods ordered herein and all other goods ordered this season shall remain in the Morrison Manufacturing Company until they have been paid for in full." "This contract shall be subject to the conditions and warranty printed on opposite page." If the parties had intended a bailment, instead of a sale of the property, why were these provisions inserted? They are all foreign to and inconsistent with the idea of a contract of bailment. If appellant was to act as a mere bailee of the property for the purpose of storing and transferring the same for respondent, it is inconceivable that it would have agreed to give its promissory notes for the plows, or that respondent would have expressly reserved the title, or that appellant would have agreed to look to transportation companies for any loss or damage in shipments, or that respondent would have warranted the plows to appellant. From a reading of the whole instrument, we are forced to the conclusion that the contract was clearly intended to be a sale as distinguished from a bailment, and that the provision reserving title in the vendor was intended merely as a security for the

payment of the purchase price.   The courts of this country with great unanimity have held contracts similar to the one in question to be contracts of conditional sale.   Smith v. Williams, 90 App. Div. (N. Y.) 507, 85 N. Y. Supp. 506; In re Tweed (D. C.) 131 Fed. 355; Standard Implement Co. v. Parlin, 51 Kan. 544, 33 Pac. 360; Cleveland, etc., Co. v. Matson, 30 Ill. App. 372; South Bend, etc., Co. v. Cottrell (C. C.) 31 Fed. 254; Hirsch v. Steele, 10 Utah, 18, 36 Pac. 49; Lewis v. McCabe, 49 Conn. 140, 44 Am. Rep. 217; Boon v. Moss, 70 N. Y. 465; Bryant v. Crosby, 36 Me. 562, 58 Am. Dec. 767; Rogers v. Whitehouse, 71 Me. 222; Wright v. Barnard, 89 Iowa, 166, 56 N. W. 424; Wheeler v. New Haven Wire Co. (Conn.) 16 Atl. 393; Mack v. Story, 57 Conn. 407, 18 Atl. 707; McGinnis v. Savage, 29 W. Va. 362, 1 S. E. 746; Frank v. Batten, 49 Hun. (N. Y.) 91, 1 N. Y. Supp. 705.

Appellant's counsel makes a very plausible argument in support of his contention that, if the contract should be held to be ambiguous, the subsequent conduct of the parties demonstrates beyond question that they considered it a mere storage and transfer contract, and that such intention should control.   While we consider that the contract is clear and unambiguous, and hence that parol evidence is incompetent to show that the parties intended to enter into a contract different from that disclosed by the instrument, we will briefly note the evidence introduced at the trial, in so far as it tends to throw light upon such intent.   Certain correspondence was had between the parties after the contract was entered into, as follows:   On June 28, 1900, appellant wrote respondent as follows.   "We are in receipt of your favor of the 26th, and in reply will say that the situation up here is very serious.   If this country gets back its seed and flour, it will do very well.   We are of the opinion that rain coming after this will not help wheat or oats.   * * *   Thousands of gang plows are running, plowing under wheat.   In regard to plow trade this fall, will say that we do not expect to sell a gang plow this season.   * * *   Furthermore, if the farmers bought, they could not pay, so there would be no special object in selling, if they were willing to buy. * * *   We did not want to let this matter run on until December, and then tell you that we could not pay.   We know now that we will be unable to make collections for the goods we have sold, and we do not feel like putting out any more on this crop.   * * * We will make this proposition to you, which is really the best we

can suggest at this time: We will turn you over your plows, and afford you free transfer charges and storage and insurance for any plows that you will carry over until next season. We thought best to place this matter before you early in the season so that you could protect yourself, rather than wait until it was too late. * * * Yours truly, Fargo Storage & Transfer Co." On June 30, 1900, respondent replied as follows: "Yours of the 28th received, and we are quite surprised at the attitude you take. Of course, we have carried these goods already for a year, and have had our money tied up in the material and labor represented by this shipment very nearly a year and a half already, as we have to make these goods up for some time before they are shipped. We are not in a position to carry the whole load here, by any means, and, as you have a very liberal contract with us, by which you have had the goods carried one year, which is not customary in our other deals, we shall certainly expect you to settle up for this car. * * * We have depended on the money that will be due us on the 1st of December, and cannot at this time see our way clear to say that we will extend the time. * * * Yours truly. * * * P. S. You have probably overlooked the fact that you are entitled to 10 per cent discount on your indebtedness to us if you pay it the 1st of September, and we don't see how you can very well afford to let this opportunity go by." On June 28, 1900, Mr. Downes, respondent's salesman, and the person who made the contract with appellant in behalf of respondent, replied to appellant's letter as follows: "Your kind favor received and note fully what you say about crop conditions. * * * We will, however, have to let the deal stand as it is for the present. I have no doubt but that I can get the factory to allow any reasonable request made of them this season. They are a very liberal firm, and I think we can arrange matters regarding goods on hand at the end of the season, in such a way as will be entirely satisfactory to you. Very truly, P. J. Downes." The next correspondence appears to have taken place in 1901, respondent writing to the appellant as follows: "Ft. Madison, Ia., Nov. 27, 1901. Fargo Transfer & Storage Co., Fargo, N. D.—Gentlemen: Please send us a list of goods that you have on hand at the present time, together with a report of all goods you have shipped out to any of our other customers. We desire this so that we may get your account checked up, and we would like to have it as soon as you can possibly get around to

it.　Yours truly, Morrison Mfg. Co." To which appellant replied on November 30, 1901, as follows: "Replying to yours of the 27th inst., we have on hand here for your account 19 fourteen-inch M. B. gang plows and 29 extra shares. Of the 9 extra shares short to complete gangs, 5 was short on original shipment, as per notation on your invoice, and 4 were sold to local trade by us. We have no orders to ship any of your goods to your other customers. Yours truly, Fargo Storage & Transfer Co." On December 4, 1901, respondent wrote appellant as follows: "Answering your letter of the 30th, will say that we thank you very kindly for the information you gave us regarding goods on hand, and we herewith enclose you statement of account showing $9.34 due for shares sold. Yours truly, Morrison Mfg Co." And on December 11, 1901, appellant wrote respondent as follows: "Herewith we hand you check for $9.34 in settlement for fourteen-inch shares sold by us from your stock on hand here. Yours truly, Fargo Storage & Transfer Co."

The next correspondence in the form of letters between these parties was had on January 28, 1904, when respondent wrote appellant as follows : "Yours of the 26th received, saying that you have some gang plows belonging to us in your warehouse. There is a mistake about this, because we have no gang plows there. These gang plows were sold to the Fargo Storage & Transfer Co., and we have their written order and contract for the same, and it is long past due. We have been negotiating with them to try to get them to pay it up, but they have so far failed to pay, and we are preparing to commence suit against them and will push it with all the vigor we can to see who is right. We have a clear and unmistakable contract covering this car of gang plows and our attorney says that it is perfectly good; so it is immaterial to us what you do with the plows, as we do not claim ownership, but we do claim that the company are owing us and we are going to bring suit. * * * Yours truly, Morrison Mfg. Co." The above letter was addressed to the Northwestern Port Huron Company, the successors to the Fargo Storage & Transfer Company.

In 1901 certain statements of account were rendered by respondent to appellant as follows:

"November 21, 1900.

"Fargo Storage & Transfer Co., to Morrison Manufacturing
Co., Dr.

| | | | |
|---|---|---|---|
| Nov. 7, 1899, To mdse. .................... | | | $1,160 00 |
| Dec. 1, By 19 plows O. H.......... | $1,102 00 | | |
| By disc. at 10% on $58..... | 5 80 | | |
| By cash ................... | 52 20 | | |
| | | $1,160 00 | $1,160 00 |

1900 settlement.

"We send you this statement to be checked over with invoices represented herein so that any error may be detected and corrected before the time of payment as indicated on invoices and contract Kindly report at once any error."

On December 4, 1901, another statement was rendered as follows:

"Fargo Storage & Transfer Co., to Morrison Manufacturing
Co., Dr.

| | | | | |
|---|---|---|---|---|
| Nov. 7, 1899, To mdse. for transfer ....... | | | | $1,160 00 |
| Credit ........ ..... | $52 20 | | | |
| Discount ...... .... | 5 80 | | | 58 00 |
| | | | | $1,102 00 |
| Goods on hand: | | | | |
| 19 M. B. gangs less 5 shares | | | | $1,102 00 |
| Less 4 shares sold ... | $14 00 | | | |
| 33½ per cent ....... | 4 66 | | 9 34 | 1,092 66 |
| | | | $ 9 34 | $ 9 34 |

On November 30, 1901, a statement was rendered, as follows:

"Fargo Storage & Transfer Co., to Morrison Manufacturing
Co., Dr.

1899

| | | | | |
|---|---|---|---|---|
| Nov. 7. To mdse. ............... | | | | $1,160 00 |
| 1900 | | | | |
| Dec. 7. By cash ................. | $52 20 | | | |
| By disc. ............... | 5 80 | $ | 58 00 | $1,102 00 |

It appears from an inspection of the original exhibit, and from the testimony in the case, that the statement rendered on November 21st did not credit appellant with goods on hand, but that

this credit was entered upon such statement in lead pencil, probably after its receipt by appellant. This statement, as well as the one rendered on November 30th, harmonize with respondent's theory of the contract, but the statement rendered on December 4th debits appellant with "mdse for transfer," and appellant relies upon this in support of its contention as to the nature of the contract. It is quite apparent, however, that this expression was inadvertently used, as the same is not contained in the other statements. What we said above in regard to the lead pencil memorandum of credit for goods on hand in the statement of date November 21st equally applies to the statement rendered on December 4th.

From a careful consideration of the foregoing evidence, we would be unable to say, even if such contract could be held to be ambiguous and therefore subject to be explained by parol, that the parties intended to enter into an agreement merely for storage and transfer. While some of the evidence, no doubt, has a tendency to prove this fact, it is quite apparent, from a consideration of all the evidence, that a sale, and not a bailment, was intended. The letter written on June 28, 1900, by appellant to respondent, clearly shows this. If the contract did not create the relation of debtor and creditor, and was not so understood by appellant, then why was the following language used in said letter? "We did not want to let this matter run on until December, and then tell you we could not pay. We know now that we will be unable to make collections for the goods we have sold, and we do not feel like putting out any more on this crop." Surely the foregoing language is wholly inconsistent with appellant's theory of the contract. If defendant was not to pay for the plows until it had collected from customers for sales made, why this letter? Under its theory, the crop conditions were of no concern to it. Again, in respondent's reply thereto, dated June 30, 1900, respondent makes use of the following very significant expressions: "Yours of the 28th received, and we are quite surprised at the attitude you take. Of course, we have carried these goods already for a year, and have had our money tied up in the material and labor represented by this shipment very nearly a year and a half already, as we have to make these goods up some time before they are shipped. We are not in a position to carry the whole load here, by any means, and as you have a very liberal contract with us, by which you have had the goods carried one year, which is not customary in our other

deals, we shall certainly expect you to settle up for this car.  *  * * We have depended on the money that will be due us on the 1st of December, and cannot at this time see our way clear to say that we will extend the time." With the exception of the statement of account rendered on December 4th, the letters and statements rendered by respondent to appellant, when considered in the light of the other testimony in the case, are entirely consistent with respondent's theory that said contract was a sale, and not a bailment of the property therein mentioned. We are therefore of the opinion that the contract, when construed, both by its plain provisions and by the subsequent conduct of the parties, must be held to be a sale and not a bailment of the property, and by its provisions the appellant became indebted to respondent for the purchase price of the property, and it remains only for us to consider the last point raised by appellant, which is that the trial court erred in computing interest from December 4, 1901. Appellant says: "This was error. for the obvious reason that no demand was ever made for the payment of money until the commencement of the action." Appellant's counsel evidently contends that a demand was necessary in order to recover interest. The indebtedness, by the terms of the contract, was due and payable December 1, 1900. Upon the maturity of such indebtedness, appellant might bring suit without a previous demand, and it needs no citation of authorities upon the proposition that it was entitled to recover interest from the date such indebtedness was due. The purchase price of all goods not sold in 1899 became due, under the terms of the contract, on December 1, 1900, and respondent was entitled to recover interest from that date. The stipulation, "Goods herein ordered unsold this season shall become due and payable same terms 1900," has reference merely to the date upon which the purchase price of the plows should become payable. If this provision of the contract is to be interpreted as contended for by appellant, it is strange that the parties did not provide in plain language that the goods were to be paid for only when sold. It is clear that the purchase price of all goods, whether sold or not, was due and payable under the contract not later than December 1, 1900, and that interest should be computed from said date on any balance then due. The trial court allowed interest only from December 4, 1901. This was error in appellant's favor.

It follows, from what we have said, that appellant's assignments of error should be overruled and the judgment appealed from affirmed; and it is so ordered. All concur.