Matthews, J.
This is an action by The Big Store Company against the defendants, Arthur Levine, Oscar Levine, Nathan Levine, David Levine, Harry Fram and Philip Fram, to enjoin them from continuing certain acts of unfair competition, and particularly from *471 using the words “Big Store” in connection with their business located in the city of Covington, consisting of selling men’s and boys’ ready made clothing and other wearing apparel similar to that sold by the plaintiff at its store in the city of Cincinnati to customers residing in Cincinnati, Covington and surrounding territory.
The return shows that the summons had been served upon Arthur Levine, Oscar Levine, Nathan Levine and. David Levine, and that the other defendants, to-wit, Harry Fram and Philip Fram were not found in this county. The case comes before the court upon the plaintiff’s motion for a temporary restraining order against the defendants who have been served. These defendants-have appeared in the case and oral evidence has been offered both on behalf of the plaintiff and the four defendants who were served with summons.
The evidence discloses very little conflict between the parties except as to.the motives actuating the defendants and the consequences of their acts. The evidence shows, and it is admitted by the defendants that the plaintiff and its predecessors to whose rights the plaintiff succeeded, have been continuously engaged in the retail clothing business at 419 and 421 AVest Fifth street in the city of Cincinnati, Ohio, under the trade name of “The Big Store” since 1896, and that during that time they have established a large and increasing trade under that name among the residents of Cincinnati, Ohio, Covington and Newport, Kentucky, and the surrounding territory bounded by a circle, the center of which is in Covington, Kentucky, having a radius of five miles in length; that during the existence of the plaintiff and its predecessors they have spent more than $500,000 in advertising their business in newspapers, and otherwise, circulated and circulating among the residents of said territory, and at the present time the plaintiff is doing a business annually under said trade name in said territory of more than $1,500,000, and during the last six months it has made more than thirty thousand separate sales to customers residing in Covington and Newport, Kentucky, and other adjoining towns and suburbs within the designated territory located in Kentucky. During all that time the plaintiff has advertised and is *472 advertising its business in the newspapers that circulate most generally in the Kentucky cities and villages within said territory, and particularly within Covington and Newport, and in said advertisements its trade name of “The Big Store” has been. and is being displayed prominently and by reason thereof plaintiff ’s business and merchandise is known to the public in said territory as “The Big Store,” and the entire reputation of the plaintiff has been merged in those words to the elimination of the personality of those engaged in its business.
It is also conceded that all of the defendants acting together as partners, did in March, 1920, open a store at 16 Pike street, Covington, Kentucky, under the trade name of “Covington’s Big Store, ’ ’ and since said date they have and are now engaged in business selling the same kinds of merchandise as that sold by the plaintiff under its trade name of “The Big Store.” The evidence shows that the defendants are partners in that business, but it does not show the terms of the partnership agreement, or whether that partnership is for a designated period or at will. Since the defendants have been conducting their business they have advertised it under the name “Covington’s Big Store” in the same newspapers in which the plaintiff has customarily advertised its business, and the advertisements of the two stores have appeared in the same issues of the same papers.
The evidence shows that some confusion has resulted from the use of the name “Covington’s Big Store” by the defendants. Some mail directed to defendants has been delivered to the plaintiff and some bills for merchandise intended for the defendant have been charged to the plaintiff and some merchandise consigned to the defendant has been delivered to the plaintiff. There was proof of one or two other instances of persons mistaking the defendant’s store for a branch of the plaintiff’s store. These instances of confusion, it is claimed by the defendants, have resulted simply because of the fact that the defendants were just starting in business and had not notified the postoffice department and railroads of their address, and for other reasons which have and will cease when the defendants have become definitely established at their location in the public mind.
*473 Tbe divergence between the parties as disclosed by the evidence is as to the motive which actuated defendants in selecting the words, “Big 'Store” and as to whether any confusion will in reality result ■ from their continuing the use of those words. The defendants testified that they knew of the plaintiff’s business at the time the trade name was selected; that they knew that it had established a large and profitable business under its trade name and that it had various customers who resided in Covington, Newport and other Kentucky communities, but that when their trade name was being considered and decided upon they had no thought of the plaintiff’s business and of the use of the words “Big Store” by it, and that the words “Big Store” were selected by them simply because they appealed to their fancy. The other point of divergence rests more in argument as to what a rational prospective discloses will result from the use of these words as trade names by two competing establishments than in testimony as to what has actually transpired.
The rule of law governing unfair competition eases is broad, certain and well understood. It is that,
“No man has a right to use names, symbols, signs, or marks which are intended or calculated to represent that his business is that of another. No man should in this way be permitted to appropriate the fruits of another’s industry or impose his goods upon the public by inducing it to believe that they are the goods of some one else.”
Where the rule is violated a liability in damages is created and the further continuance of the unfair practices may be enjoined. Hopkins on Trade-marks, Trade-names, etc., 3 ed., p. 42.
As is said in Nims on Unfair Competition, 2 ed., p. 15:
“Unfair competition consists essentially in the conduct of a trade or business in such a manner that there is an express or implied representation that the goods or business of one man are the goods or business of another.”
And also on the same page:
*474 “If a person had established a business at a particular place, from which he has derived, or may derive, profit, and has attached to that business a name indicating to the public where or in what manner it is carried on, he has acquired a property right in the name which will be protected from invasion by a court of equity.”
And at page 25, the same authority says:
“The property rights in the good will of a business consists in part in the marks used on its goods, in its stand or locality, in its name, and all of these things are under the protection of a court of equity.”
The defendants have claimed that the words “Big Store” are descriptive terms not subject to appropriation as a trade-mark, and they as well as every one else, have the right to use those common terms of the English language. It is admitted, however, by the defendants that this term, “Big Store,” used by the plaintiff, has acquired in addition to the dictionary meaning of the words, a secondary significance in the community indicating the store of the plaintiff and embodying the reputation of the plaintiff’s store and the commodities it deals in.
Such being the state of the record, the law is that while the use of the words “Big Store” in their general and usual meaning can not be exclusively appropriated, the secondary meaning-given to them 'by the plaintiff by reason of the user, is the plaintiff’s property, to which the defendants have no right.
As is said by Nims in his work on Unfair Competition, pages 67 and 68, quoting Computing Scale Co. v. Standard Computing Scale Company, 118 Fed., 965:
; ‘ When the word is incapable of becoming a valid trade-mark, because descriptive or geographical, yet has come by long use to stand for a particular maker or vendor, its use by another in this secondary sense will be restrained as unfair and fraudulent competition and its use in its primary or common sense confined in such a way as will prevent a probable deceit by enabling one maker or vendor to sell his articles as the product of another.”
The Drake Medicine Co. v. Glessner, 68 O. S., 337, is an instructive case on this .subject.
*475 The state of the law now is such that it can be asserted that no matter what the trade-mark, trade name or other designation may be, if by long continued use it has come to represent in the public mind the business or commodity of a designated person, the use of it by another in such a way as to mislead the public into believing that it is dealing with the original user of the name when in fact it is not, will be restrained. And this doctrine applies to names used to designate the situs of a business. Some of the authorities on this subject are collected by Nims in his work at pages 82 to 86 inclusive, and he states the rule lextually on page 82 as follows:
“Trade names are either local or fixed, or else transitory or personal in character — -the one attaching to a place regardless of the ownership of the name at any one time, the other attaching to the person regardless of where the person locates himself. This distinction is important in cases involving names of hotels and buildings.
“The protection afforded by law is not limited to the exact or formal name implied by the one using it to identify his goods or his business.- For instance- a nickname by which a hotel has become known is entitled to such protection; for the use of such a nickname by a rival may work injury to the complainants house and business. Some hotel names are personal names, others impersonal, certain of these names attach to a place, to a particular .hotel regardless of its ownership; while others have been held to be the property of a person and to attach to him rather than the place.”
The author cites the case of Woodward v. Lazar, 21 Cal., 449, in which the defendants were restrained from using the name “What Cheer House” as the name of a hotel in the city of San Francisco. And on page 84, the author in speaking of the ease of Howard v. Henriques (3d Sandf.) N. Y., 725, says:
“It appears that the plaintiff’s hotel was called the Irving House, but it soon became generally known as the '“Irving House” and “Irving Hotel” indiscriminately. The defendants named their house “Irving Hotel.” There was no question of resemblances between the two hotels, or the two signs. It was the good-will represented by the name that was protected, not merely the name.”
*476 In the ease at bar, in view of the fact that the plaintiff and defendant are advertising their business in the same newspapers circulating among the same people, it seems to the court that it is inevitable that confusion in the public mind will result and that that confusion will progress in proportion to the growth of the defendant’s business; that readers of the advertisements will carry in mind the name ‘ ‘ Big Store ’ ’ long after the location has passed from their minds and in the dissemination of the advertising information, persons influenced either directly or indirectly by the advertisements of one store will through inattention, lapse of memory, and direction by others not knowing which store the inquirer desires to patronize, be directed to the wrong store, and as the defendant’s business grew it would itself suffer from such confusion misleading the public intending to deal with one or the other store.
The court does not pass upon the question of whether there was an actual intent to secure a part of the good-will of the plaintiff by the adoption of this name by the defendants. In the opinion of the court the actual intent is not material, the act is to be judged by its natural ordinary consequences and the defendants legally are chargeable with the intent to produce such consequences.
As is said in the case of Thum Co. v. Dickinson, 245 Fed. Rep., 609, at 621 and 622:
“It is not necessary to prove intent by direct evidence, where it is clearly to be inferred from circumstances. # * * Further, in our judgment, the resemblances and confusing features shown in respect of defendant’s output are themselves calculated to lead users to 'believe that it is the plaintiff’s output and so to - deceive them, and such consequences, inevitable in their nature, justify an inference of wrongful intent to secure ‘some part of the benefit of the good-will and reputation of the plaintiff’s trade.’ ” ' .
The same rule is stated in Nims on Unfair Competition, at page 622, in this language:
“The denial of intent to injure will not avail a defendant. Under proper circumstances the court will find in his acts evi *477 deuce of an intent to defraud even in the face of his most explicit denial that he ever intended to pass off his goods as those of the complainant, ‘ and such intent may be, and often is, made out, not from direct testimony, but as a clear inference from all the circumstances, even when the defendant protests that his intention was innocent.’ ”
At page 623:
“Assuming that up to the time an injunction is asked the defendant has acted with entire good faith, firmly believing that he was causing no injury to the plaintiff and usurping none of his rights, still he will be enjoined.”
The books teem with authorities illustrating the application of the rule of unfair competition to specific cases, but it would be of no service to cite these authorities at length. The court contents itself with citing two cases bearing a strong resemblance in facts to the facts in the case at bar. The first is the case of Cady v. Schultz, 19 R. I., 193, in which the defendant was enjoined from using the words “U. S. Dental Rooms” in á place adjacent to Providence; the court holding that the plaintiff having for several years conducted his business in Providence under the name “U. S. Dental Association,” had acquired the right to the use of that trade-name so as to exclude others from using a similar name in the same kind of business within the territory in which the plaintiff had customers.
The second case is that of Samuels v. Spitzer, 177 Muss., 226, in which the facts were that the plaintiff located in Rhode Island, had advertised his business under the trade-name “Manufacturers’ Outlet Company” over a wide territory including the southwestern part of Massachusetts, in which the city of Taunton was located. The defendant commenced business in Taunton under the name of “Taunton Outlet Company,” and the court held that a bill in equity alleging the facts and that the public was being thereby deceived and trade diverted from the plaintiff to the defendant, stated a good cause of action.
So, the court holds in this case that the plaintiff is entitled to the use of the words “Big Store” as a trade-name within the *478 territory in which the defendant’s store is located; that the defendant in using the trade-name, “Covington’s Big Store,” under which to conduct its business of a similar nature, is infringing the rights of the plaintiff, and that the plaintiff is entitled to a temporary restraining order enjoining the defendants from continuing to conduct their business under said name containing the words “Big Store” by themselves or in combination with other words.
The defendants have objected to the court assuming jurisdiction in this ease for the reason that the defendants are partners whose place of business is located outside of the territorial jurisdiction of the court, and all of the defendants have not been served. It appears by affidavit and by oral testimony that the two unserved defendants reside in Kentucky, and that they are members of the partnership conducting the business under the trade-name “Covington’s Big Store.” At no place does it appear that that partnership is more than a partnership at will. In the opinion of the court jurisdiction of this cause, so far as the defendants served are concerned, exists for the following reasons:
1. The claim asserted by the plaintiff against the defendants is for the violation of a right available against the entire world, and is therefore an action based on a tort. This fact is recognized by all the text writers and is found stated in the eases on the subject.
In Thum v. Dickinson, supra, Judge Warrington, at page 623, said:
“And it is the settled law that tort actions like these can not be successfully defeated upon the ground that plaintiff has violated the laws prohibiting monopolies, etc.”
So also, to the same effect, Bissell Chilled Plow Works v. Bissell Plow Company, 131 Fed., 357; Vacuum, Oil Co. v. Eagle Oil Co., 122 Fed., 105, at page 106. The liability being based upon tort is according to fundamental law joint and several, and where.a joint and several liability exist a plaintiff may sue one, all or any number at his option, and the fact that equitable *479 relief is sought against the tort feasor does not change the rule.
2. The action being one for equitable relief, would in the absence of statute, he governed by the rules of equity relating to necessary parties, and two of the defendants being out of the jurisdiction of the court and that fact being shown by the return of the summons, a court of chancery would proceed to grant relief against those before it, provided that could be done without depriving the parties not before the court of substantial rights. The equitable rule on the subject is stated in “Mitford’s and Tyler’s Pleadings and Practice in Equity” at page 21 as follows:
“Where persons interested are out of the jurisdiction of the court, it is sufficient to state the fact in the bill, and to pray that process may issue on their return; and if the statement be proved at the hearing, their appearance will be dispensed with. But whether the court can decree in their absence, depends on the nature of their interest, and the manner in which it will be affected by the decree. If they are to be active in performing the decree, or if they have rights entirely distinct from those of other parties, the court can not, in their absence, decree against them. But if they are only passive objects of the decree, or their rights are merely incidental to those of the parties before the court, a complete adjudication can be made in their absence.”
Tested by this rule, even in the absence of a statute, a court of equity would have jurisdiction to grant the relief sought against the defendants served. They are to be restrained only from appropriating the property right of the plaintiff in the secondary meaning of the words, Big Store. The evidence does not show that the absent defendants have any right to require the present defendants to continue to use the words, the Big Store in their secondary significance. It does not appear that there was a contract of partnership between the defendants to conduct a business in Covington for a definite unexpired period • under the one partnership name of “Covington’s Big Store.” The defendants before the court, therefore, could of their own motion decline to continue this business under the name “Covington’s Big Store,” and would by so doing violate no right of *480 the absent defendants. The defendants before tbe court having that right as against the absent defendants, and the court having found that it is their legal duty to refrain front using said name, the decree of the court requiring the present defendants to perform their legal duty, violates no right of the absent defendants. Four of the six partners of this partnership are before the court and these four, being a majority, completely control the internal affairs of the partnership, except in so far as restrained 'by the express terms of the partnership agreement; 20 Ruling Case Law, page 75.
The equitable rule of proceeding in the absence of parties who are beyond the jurisdiction of .the court was applied in the case of Sippile v. Albites, 5 Abbott’s Practice Rep. (N. S.), 76, to a case of partners, and at page 78, the court states the rule as follows:
“ It is a familiar rule of equity that where a person who ought to be a party is out of the jurisdiction, and the fact is admitted or proved, that of itself constitutes a sufficient ground for dispensing with his being made a party, and the court will proceed to a decree without him. This rule is not confined to mere nominal parties; and it is well settled that even in the ease of one partner residing in a foreign country, the court will proceed to make a decree against partners within the jurisdiction, provided it can be done without manifest injustice to the absent partner.”
3. Jurisdiction is expressly conferred by Section 11299 of the General Code, which provides:
“"When service has been made on one or more defendants, but not on all, the plaintiff may proceed as follows:
“1. If the action is against defendants jointly indebted upon contract, against the defendants served, unless the court otherwise directs.
“2. If the action is against defendants severally liable, without prejudice to his rights against those not served, against the defendants served.”
This section taken in conjunction with Section 11255, covers all classes of cases and gives plaintiff the absolute right to pro *481 ceed against defendants served where the liability is several, and leaves it to the discretion of the eo-urt to determine whether the action shall proceed against the defendants served where the liability is joint.
In the case of Yoho v. McGovern, 42 Ohio St., 11, the court-applied Section 11299 to an action against two joint makers of a promissory note, one of whom was served and the other was not served because he was a non-resident, and the court there held that the action could proceed to judgment against the joint debtor served with summons, and said:
“A careful examination of the authorities will demonstrate that the' principle upon which this rule is grounded is that if one of several joint contractors is beyond the jurisdiction of the court — out of the reach of its process — -this creates a necessity of allowing the action to proceed against those within the jurisdiction, and this without affecting the liability of the former, in order to avert an entire failure of justice.”
Assuming a joint liability because of the partnership relation among the defendants, this court will still hold that a necessity existed for allowing the action to proceed against those within the jurisdiction, for the reason that the same objection to jurisdiction could be raised no matter in what court the action was instituted, and to refuse to assume jurisdiction would be to deny relief altogether, and that therefore, the provision in Section 11299 General Code, which gives the court power to veto the determination of the plaintiff to proceed against the defendants served should not be applied.
Counsel for defendants rely upon the case of Penn v. Hayward, 14 Ohio St., 302. In the opinion of the court that case is not an authority against the position taken by the court in this case. In that case the court expressly found that there was no necessity for the Ohio court to assume jurisdiction, and inasmuch as complete relief could not be awarded in the absence of non-resident defendants, the court exercised its discretion and refused to assume jurisdiction. As is said in the second paragraph of the syllabus, the court held:
*482 “But where part only of the persons from whom such conveyance is required are residents of the state, and the court has not acquired jurisdiction over the persons of the non-residents, so that complete relief can not be had in that suit, the case will be dismissed, especially where no real necessity exists for trenching upon the rule discountenancing a multiplicity of suits.”
It will be noticed that the court does not say that the Ohio court did not have jurisdiction to proceed. All it held was that inasmuch as complete relief could not be granted, the ease should be dismissed since there was no necessity shown for assuming jurisdiction, and that to assume jurisdiction would cause a multiplicity of suits. And at page 307, the court pointed out that another court had jurisdiction to settle the entire controversy, saying:
“The courts of that state have jurisdiction over the land itself and can therefore do what we are unable to accomplish— settle the entire controversy in one and the same proceeding.”
The facts in the case at bar are the direct antithesis. A necessity does exist for assuming jurisdiction in order that there may not be a failure of justice, and assuming jurisdiction will in no wise result in a multiplicity of suits.
A temporary restraining order may be prepared enjoining the defendants served with summons in this action from continuing to use the words “Big Store” alone or in combination with other words as designating their store dealing in commodities of the same character as those dealt in by the plaintiff within the territory in which the plaintiff has established a secondary meaning for the words “Big Store” as shown by the evidence adduced upon the hearing of the motion for a temporary restraining order.